PITCHER *v.* LAKE SHORE & M. S. RY. CO.

(*Supreme Court, General Term, Fifth Department.* December 30, 1889.)

1. CARRIERS—INJURIES TO PASSENGERS.

In an action for personal injury caused by the sudden starting of defendant's train, on which plaintiff was a passenger, it appeared that plaintiff was given 45 minutes

for supper, but returned in 25, and immediately attempted to mount the car, no signal to start having been given. His evidence, that the engineer looked at him as he passed around the engine on his way from supper, was not contradicted; and it appeared that the lights were such that the engineer could see him. *Held*, that the question of defendant's negligence in not affording plaintiff a reasonable opportunity to mount the train was for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE—NONSUIT.
    Where the evidence is conflicting, the question of contributory negligence is for the jury.

Motion for new trial on exceptions.

Action of C. Frank Pitcher against the Lake Shore & Michigan Southern Railway Company for damages on account of personal injury. After hearing the case before a jury at a special term, Erie county, the court ordered the entry of a nonsuit, and that the motion for a new trial on plaintiff's exceptions be heard at the general term.

Argued before BARKER, P. J., and DWIGHT and MACOMBER, JJ.

*Norris Morey*, for plaintiff. *McMillan, Gluck & Pooley*, for defendant.

MACOMBER, J. This action is brought to recover damages for personal injuries sustained by the plaintiff, in the month of July, 1887, at Buffalo, while a passenger on a freight train of the defendant, having in charge 19 horses for his principals, who lived in Boston, Mass. The plaintiff embarked on the defendant's railroad at Tecumseh, Mich., upon a continuous trip train, and arrived in front of the Crandall House, in Buffalo, on July 12, 1887. He had no ticket, and did not directly pay for his passage; but he was carried by the company, at the request of his principals, as a proper and necessary attendant in charge of the horses. In front of the Crandall House, on the opposite side of the railroad tracks, there are stock or cattle chutes three and one-half feet higher than the adjoining railroad tracks. These chutes were used for the purpose of unloading and loading live-stock. The train stopped on the track nearest to the Crandall House. The plaintiff was told by the conductor of the train that he would have 45 minutes in which to get his supper and return to his car, which would be waiting for him for that length of time. The caboose, it seems, in which the plaintiff and others had usually traveled on this journey, was to be taken to another yard, and it was not expected that it would constitute a part of the train from the above-mentioned stopping-place to the other yards of the defendant, where the train was about to go. The plaintiff was gone to his supper for only a period of 25 minutes, and on returning found that the engine had been shifted from the east end to the west end of the train, and that the train containing the plaintiff's horses had been removed to the tracks nearest the cattle chutes. As he placed his foot in the stirrup, in order to get into the car door, the train started backward, suddenly, along the chutes, where his foot was caught in a space between the chutes and the side of the car, at about the level of the bottom of the car door, resulting in serious personal injuries to him.

That the plaintiff was a passenger of the defendant, to whom there was due all the diligence of the railroad to protect him from harm while riding upon its train in care of his horses, admits of no doubt. *Smith* v. *Railroad Co.*, 24 N. Y. 222; *Seybolt* v. *Railroad Co.*, 95 N. Y. 562. This principle by no means implies that a passenger upon a freight train, having in charge live-stock in transportation, is entitled to the same facilities for getting on and off the cars that persons have upon strictly passenger trains, where stations and platforms are usually provided. No negligence can be imputed to the defendant by an omission to erect such stations or platforms. *People* v. *Railroad Co.*, 104 N. Y. 58, 9 N. E. Rep. 856. The question is whether the defendant's agents were guilty of any omission of duty to the plaintiff while operating this train, having on board himself and his horses.

The learned trial judge granted the nonsuit, in part, upon the ground that

the plaintiff was guilty of want of care which contributed to the production of the injury, and that consequently no recovery could be had by him. An examination of the evidence, which is substantially undisputed, reveals at least a case where this question should have been passed upon by the jury. The plaintiff was unable to resume his place in the caboose, for the reason that it had been dispatched elsewhere. Indeed, he was apprised by the conductor of the train that he should get into his stock-car at that point. It is argued by counsel for the defendant that the plaintiff, instead of entering his car upon the side nearest to the Crandall House, and which he would approach first, unnecessarily passed around in front of the locomotive, down the other side of the train, to where his own car was, and there carelessly undertook to get on. He contends that upon the other side of the car, nearest to the hotel, electric lights so lighted up the train that the plaintiff could easily see where he was stepping, and could see any threatening danger, while the other side of the car, which he actually mounted, was somewhat in the shadow of the train, and hence the plaintiff, through his own fault, could not see the dangers attending the efforts to get on board. An answer to this proposition is the established fact, sworn to distinctly by the plaintiff, and uncontradicted by any person, so far as we are able to ascertain, that the door of the car on the side nearest to the hotel was locked, and was not accessible to the plaintiff; so that, if he were to get on board his car at all, he would have to do it on the other side. Moreover, when the plaintiff left the train it was upon a track nearest the hotel, and when he came back to it, it had been transferred two or three tracks further off, close by the side of these chutes; of which fact, and of the dangerous condition of the train for getting on board, the plaintiff appears to have had no notice. The situation presented to him at the moment was the necessity to board his car at that moment, or not at all. These facts presented a case for the consideration of the jury, and we think it was error to withdraw from them the decision thereof.

It is further contended by counsel that the defendant was guilty of no negligence which could legally charge it with liability. From the testimony of the plaintiff, the jury would have been entirely justified in saying that the engineer distinctly saw the plaintiff as he passed around the locomotive and took his way, down the other side of the train, to the door of his car. The plaintiff testified that the engineer looked at him. The lights were such, certainly, that he could have seen him. If this be true,—and there is nothing in the case to gainsay it,—taken in connection with the fact that the plaintiff came from his supper much within the time limited by the conductor, it followed that it was the duty of the engineer, as well as of the conductor of the train, to afford to the plaintiff a reasonable opportunity to get into his car. The door of the plaintiff's car was at the west end of, and very close to, the chutes. As soon as he got to the car door, he placed his right foot in the stirrup, and took hold of the handle, to mount in. Just as he lifted his left foot from the ground, and before he had time to get into the car, the train, without any warning or signal whatever, was suddenly started backward, and the plaintiff was dragged into the cattle chutes for about 40 feet, the sides of the car rubbing against the chutes, resulting in the injuries to the plaintiff's back and to his ankle, which required the amputation of the leg below the knee. If it be true, and the evidence is undisputed, that the plaintiff had been told to get into his car at that point within 45 minutes from the time he left the train, and the engineer saw him apparently coming to his car for the purpose of getting aboard, it was the duty of the latter, knowing well the dangerous locality, to give the plaintiff ample opportunity to mount into the car before starting the same with a sudden, backward jerk. At least, it was his duty to give some signal, by means of the whistle or bell, or otherwise, that the car was about to start, which would have the effect of warning the plaintiff against any attempt to get on board. But the evidence is that the bell was not rung, nor was the

whistle blown, nor other signal given to the plaintiff that the train was about to move.   He therefore had the right to believe that he could safely get on board at that point, and that he would not, by any sudden motion of the car, be brought into collision with these chutes, of the existence of which he does not seem to have been aware at that time.   *Bartholomew* v. *Railroad Co.*, 102 N. Y. 716, 7 N. E. Rep. 623; *Ganiard* v. *Railroad Co.*, 2 N. Y. Supp. 470; *Dillon* v. *Railway Co.*, 16 N. Y. St. Rep. 767; *Keating* v. *Railroad Co.*, 49 N. Y. 673; *Bellman* v. *Railroad Co.*, 42 Hun, 130.   For the foregoing reasons, the motion for a new trial should be granted, with costs of this appeal to the plaintiff, to abide the event.

BARKER, P. J., concurs.   DWIGHT, J., not voting.