### SCHWARTZ *v.* CORNELL *et al.*

(*Supreme Court, General Term, First Department.* February 11, 1891.)

MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.

In an action against a firm of contractors to recover for the death of one of their employes by falling through an opening in the floor of a building into which they were putting the iron-work, it appeared that intestate knew of the existence of the hole, and voluntarily chose to work near it to save labor. *Held*, that the complaint was properly dismissed, even though the foreman in charge of the work was incompetent, the defendants negligent in not covering the hole, and the intestate unused to the work he was engaged in.

Appeal from circuit court, New York county.

This action was brought by the plaintiff, as administrator of Charles A. Schwartz, deceased, to recover damages in the sum of $5,000 for the death of said Charles A. Schwartz, alleged to have been occasioned by the negligence of the defendants, a firm of builders, in whose employ the decedent was, in not providing a capable and suitable foreman or superintendent to oversee the work in the building Nos. 47 and 49 West Twenty-Sixth street, New York city, and also in not protecting a certain opening in the floor of said building, whereby on August 14, 1888, the decedent, while in the performance of his duties, was precipitated into the cellar, and sustained the injuries which resulted in his death. Defendants admitted that Schwartz was in their employ as a skilled mechanic, and that on the 14th day of August, 1888, he slipped through an opening in the floor of the building 47 and 49 West Twenty-Sixth street, and sustained injuries which resulted in his death, but denied the allegation of the complaint charging negligence on the defendants, and averred as a separate defense that the death of the deceased was caused by his own negligence or that of his fellow-servants. The issues were tried at circuit before a jury. The leading facts established at the trial were as follows: Defendants were engaged, under contract, in putting in the iron-work in said building. Deceased was an iron-worker, and had been in the employ of defendants about four years as an inside man; part of the time as an apprentice, and afterwards as a master workman. An inside workman is a man who stays in the shop; an outside man is on outside work. Schwartz had been at work on this building, and, of course, as an outside man, for about 12 days prior to the 14th of August, 1888. Schwartz was working on the first floor, fitting in corrugated iron around the belt-boxes. The belt-box is a box in the floor where the belt runs down to the engine-room for the electric lights. The engine is on the bed of the floor below. These belt-boxes were on both sides of the floor. They were not in the center, but on each side. There

were two lines of columns along this floor, running up to the ceiling, from the front to the rear. The space in feet between those two columns, I think, is about 18 or 20 feet; that is, in the center of the building, and the building is 100 feet by 50. There were 2 rows of belt-boxes, 14 in a row, and Schwartz was working on a belt-box about in the middle of the building. At the extreme back of the building, next the rear wall, there were 3 openings in the floor, 1 large and 2 small ones. The large hole was for a stairway, and was boarded over. The small holes were left for the steam-pipes to come up, and were in dimensions about 2 feet by 4, and about 23 feet above the cellar bottom. This part of the building was well lighted by large windows in the back wall, and there was no difficulty in seeing this hole. On this occasion the men were using barrels on which to rest their anvils, of which there were 3 or 4 or 5, while they were engaged in cutting the corrugated iron, which came in large sheets from the factory. There were a number of these barrels on various parts of the floor, and the men worked at one or another, and shifted them around as they saw fit. As regards the immediate cause of the accident, Frank Vanderbeck testified as follows: "We began work that morning at 7 o'clock. It was clear around this barrel, so that he [Schwartz] could have stood on any side he liked. He was standing around on the side, with his back towards the hole. The name of his helper was Joseph Fink, I think. At the time of the accident he was using my hammer, and I was standing along-side of him, waiting for him to get through with it. *Question.* And how heavy or how large was this piece of iron that he had just cut off, and which was about to fall to the floor? *Answer.* About 6 inches wide by $1\frac{1}{2}$ feet long. He had just cut that with his chisel, and was knocking it off with his hammer, and as he did so he stepped back. There were pieces of iron lying at his feet; and he stepped back, and the thing was done so quickly that I can't say positively whether he tripped on anything or not. He was within a step of the hole. This barrel was not fastened to the floor at all. It could be moved anywhere. The floor was clear, so the barrels could have been put anywhere that the workmen liked." John Romer, the foreman in charge, testified: "I saw him [Schwartz] there just that morning just before I gave him the warning to be careful. I told him to be careful. I didn't tell him specially. *Question, (the Court.)* To be careful of what? *Answer.* Careful not to fall. *Q.* Was he there when you told him that? *A.* Yes, he was." The defendants asked the court, at the close of the plaintiff's evidence, to dismiss the complaint, on the ground that the accident was caused solely by the negligence of the deceased, and that no negligence was proved on the part of the defendants rendering them liable in law for the consequences of this accident. "*The Court.* There is no doubt about this question. There is absolutely no evidence that would justify a finding that the defendants were guilty of negligence, and from the evidence it is absolutely apparent that the injury was the result of the plaintiff's own voluntary act,—his own act in picking out this locality, and working along-side that hole. He had hundreds and hundreds of square feet about there where it was absolutely safe to do his work, and he deliberately chose, of his own volition, the only place on that floor that was unsafe. To make the defendants liable for an accident, under those circumstances, would, in my opinion, reverse every rule of law. If the jury should find a verdict for the plaintiff, I should set it aside. I think my duty would be to set it aside." And the motion to dismiss the complaint was granted. Plaintiff appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Hector H. Hitchings,* for appellant. *Butler, Stillman & Hubbard, (John Notman,* of counsel,) for respondents.

BRADY, J. Giving the plaintiff the benefit of all the propositions urged in his favor, namely, that the foreman put in charge of the men, including the

plaintiff's intestate, was incompetent, that the defendants were remiss and negligent in not covering the hole through which the intestate fell, and did not, therefore, discharge the duties they owed to the workmen, nevertheless the evidence shows conclusively, not only that the intestate knew of the existence of the hole, but that in working near it he exposed himself to danger voluntarily, inasmuch as he was not obliged to do his work at that point, and apparently chose it because it was more convenient, and involved less labor. And no case can be found in the books in which a workman, albeit unused to the employment he was engaged in, but with full knowledge of its dangerous features and surrounding elements, has recovered for injuries received from one of such dangers to which he voluntarily exposed himself.  He is bound to protect himself by the use of his senses.  The rule is well settled: "If the servant, before he enters the service, knows, or if he afterwards discovers, or if, by the exercise of ordinary observation or reasonable skill or diligence in his department of service, he may discover, that the building, premises, machine, appliance, or fellow-servant, in connection with which or with whom he is to labor, is unsafe or unfit in any particular, and if, notwithstanding such knowledge or means of knowledge, he voluntarily enters into or continues in the employment without objection or complaint, he is deemed to assume the risk of the danger thus known or discoverable, and to waive any claim for damages against the master, in case it shall result in injury to him."  Thomp. Neg. p. 1008; *Haskin* v. *Railroad Co.,* 65 Barb. 129, affirmed 56 N. Y. 608; *Jones* v. *Roach,* 41 N. Y. Super. Ct. 248; *Stoutenberg* v. *Lumber Co.,* 13 Wkly. Dig. 445; *Appel* v. *Railroad Co.,* 111 N. Y. 550, 19 N. E. Rep. 93; *De Forest* v. *Jewett,* 88 N. Y. 264.  The court in the last case cited said: "We do not see how the defendant can be held liable in this case without abolishing the well-established rule that the servant, by accepting the employment, assumes the risks and perils incident thereto, so far as they are apparent and obvious."  The judgment appealed from must for these reasons be affirmed, with costs.

All concur.