LOUISA FREEMAN, as ADMINISTRATRIX OF GEORGE N. FREEMAN, DECEASED, APPELLANT, v. THE GLENS FALLS PAPER MILL COMPANY, RESPONDENT.

*Negligence — when a question for the jury — effect of a failure to supply doors in elevator shafts — Laws of 1887, chap. 462 — a risk relating to the safety of the place of employment is that of the master.*

In an action brought to recover the damages resulting from the death of a workman caused, as alleged, by the negligence of his employer, it appeared that the deceased was working at the bottom of an elevator shaft in a pulp mill run by very heavy machinery; that the elevator shaft had not the self-closing doors required by chapter 462, Laws of 1887; that the deceased put his head into the elevator shaft, on the lower floor of the mill, in an effort to load a heavy grindstone upon the elevator platform; that an oil barrel, which had been standing in the upper room of the mill, was at that moment upset by the jarring of the machinery, rolled to the shaft, fell and killed the deceased.

*Held,* that a nonsuit should not have been granted.

That proof of the failure to supply the doors required by statute was *prima facie* evidence of negligence upon the part of the master.

That the questions of contributory negligence raised by the defendant, as to whether the workman might have, and was bound to, put in place a certain bar which, as alleged, would have prevented the barrel from rolling into the shaft, and as to whether he was justified in putting his head into the shaft, being disputed questions, should have been submitted to the jury.

That where a risk relates to the safety of the place of employment, and not to the dangerous character of the employment itself, it is the risk of the master, and not that of the servant.

That as the barrel standing upon the floor involved, as the result showed, a risk not evident or palpable, the question whether the servant had knowledge of the possible danger was one for the jury.

That the act of leaving the barrel in the position it occupied, by whomsoever done, was one which affected the safety of the place of employment, and was, therefore, in a legal view, the act of the master, and that if such act was negligence it was the negligence of the master.

APPEAL by the plaintiff Louisa Freeman, as administratrix of George N. Freeman, deceased, from a judgment, entered in the office of the clerk of Saratoga county on the 3d day of June, 1890, in favor of the defendant for costs, and dismissing the complaint after a trial at the Saratoga Circuit before the court and a jury; and also from an order made at said circuit on the 1st day of May, 1890, directing a nonsuit.

The action was prosecuted for the alleged negligence of the defendant in the construction and operation of its pulp mill, by reason of which the plaintiff's intestate was killed while engaged as an employee of the defendant in repairing the mill, where he had been engaged in similar service for four or five weeks immediately prior to the accident by which he was killed.

The defendant's pulp mill stood upon a steep bank and consisted of three stories, the floor of the upper story of which was on a level with the street, and communicated with the two lower stories of the building by means of an elevator. The elevator passed up and down through a shaft or well and was propelled by machinery, which was put in motion by means of shifting a belt from a loose to a fast pulley.

At the time of the accident there was no trap door to close the well or shaft in the upper floor through which the elevator passed in ascending or descending. The well or shaft was closed up on three sides on the upper floor and on the other side were two bars, the upper of which was fastened to the posts of the well and the other was movable back and forward through clasps attached to the posts. This movable bar was, when in position, about twenty-four inches above the level of the floor at one end, and about twenty-five and one-half inches at the other. There was some evidence tending to prove that it was the duty of persons passing through these bars from the elevator to the floor, or from the floor to the elevator, to close this lower bar on passing, and that a short time before the accident plaintiff's intestate, in company with other workmen, passed from the upper floor on to the elevator, and that plaintiff's intestate, who was the last to pass through, neglected or omitted to close the well by putting up this bar, and that it was closed by another employee of defendant. The evidence also tended to show that the barrel, by the falling of which the accident was produced, would roll under the bar if it was in position. At the time of the accident the intestate, with others, was engaged in loading on the elevator at the lower floor of the mill a heavy grindstone, and while adjusting a roller under the stone boat on which the grindstone was being moved upon the elevator, his head came within the line of the well or shaft, and while in that position an empty oil barrel, which had been left on the upper floor, was put in motion by the vibration of the mill, caused by the working of the powerful machinery used in grinding and pulverizing

wood, and rolled from its position, upon the floor, which slightly inclined towards the well, into the open well or shaft and fell upon intestate's head, causing his death, to recover the damages resulting from which this action was brought. On the trial the plaintiff, on motion of the defendant, was nonsuited, and from the judgment entered upon the nonsuit the plaintiff appeals.

*T. F. Hamilton*, for the appellant.

*N. C. Moak*, for the respondent.

MAYHAM, J. :

Three questions are raised by this appeal:

*First.* Was there evidence on the part of the plaintiff sufficient to authorize the jury to find that the defendant was guilty of negligence in not furnishing a reasonably safe place for the intestate, who was its servant, to perform its work?

*Second.* Does the evidence disclose that the intestate was himself guilty of contributory negligence, or was there such a failure of proof of freedom from contributory negligence as to justify the court, as matter of law, in taking that question from the jury?

*Third.* Did the plaintiff's intestate, as matter of law, take the risk of his employment so as to exonerate the defendant from liability?

As to the first inquiry propounded above, it cannot be denied that the law imposes the duty upon the employer in a business of this character to furnish a reasonably safe place, considering the nature of the employment, for the performance of the work by the servant. Upon this point the appellant insists that the fact that the defendant omitted to place automatic doors or traps over the elevator well or shaft on each floor of the building in which the elevator was used was in itself negligence, and upon this point calls attention to the provisions of chapter 462 of the Laws of 1887. By section 8 of that chapter it is provided that, " It shall be the duty of the owner, agent or lessee  *  *  *  to provide, or cause to be provided, such proper trap or automatic doors so fastened in or at all elevator-ways as to form a substantial surface when closed, and so constructed as to open and close by action of the elevator in its passage either ascending or descending." Section 20 of this chapter makes a neglect or refusal to comply with this provision a

misdemeanor and prescribes punishment for the same. It is apparent that this statute imputes legal negligence to a party coming within its provisions for failing to comply with its requirements and that a party injured in consequence of such negligence, unless shown to have waived its provisions, or to have contributed to the injury by his own negligence, would have a right of action against the party operating such elevator in violation of this provision of the statute. In *Jetter* v. *The New York and Harlem Railroad Company* (2 Keyes, 162) the rule upon this subject is stated to be *axiomatic:* " That every person, while violating an express statute, is a wrong-doer, and, as such, is, *ex necessitate*, negligent in the eye of the law, and that every innocent party whose person is injured by the act which constitutes the violation of the statute is entitled to a civil remedy for such injury, notwithstanding any redress the public may also have." It is manifest, therefore, that, if this opening in the floor had been closed automatically by a trap door on a plane with the upper floor of the well where the elevator passed down the shaft, that this injury could not have happened in the manner in which it did, and that the accident is directly traceable to the defendant's failure to comply with this statute. In *McRickard* v. *Flint* (114 N. Y., 222) it was held that where a party was required, by chapter 547 of the Laws of 1874, to provide a trap door at each floor at the openings for the elevator, and failed to comply with the statute, and a person lawfully upon the premises was injured by falling into the shaft, it was *prima facie* negligence for which the owner was liable. ( *White, by Guardian*, v. *Witteman Lithographic Co.*, 58 Hun, 381.) But this would not alone make the defendant liable; the plaintiff was required to go farther and show that the plaintiff's intestate was himself free from contributory negligence on his part, and this brings us to the consideration of the second inquiry propounded. It is the settled law that where a party seeks to recover damages occasioned by the negligence of the deceased, plaintiff cannot recover without establishing on the trial that he himself was guilty of no negligence which, in any degree, contributed to the injury complained of. This doctrine is too elementary to require the citation of authorities. The difficulty and embarrassment in this class of cases arises out of the application of the rule to each particular case. If this case clearly and unmistakably shows that the deceased was

free from contributory negligence, then the law upon this branch of the case pronounces in his favor. But if the question arises upon a state of facts, conflicting in themselves or capable of more than one rational construction, then it becomes a question of fact for the jury, and in such case a failure by the trial judge to submit it to the jury would be error for which a new trial should be granted.

It can hardly be claimed in this case that the question of contributory negligence on the part of intestate was so clear as to be properly disposed of as a question of law by the trial judge. On the part of the defendant it is insisted that the failure of the plaintiff's intestate to close the bar after going upon the elevator to go down, a short time before the accident, was such a neglect as to charge him with contributory negligence, but this is attempted to be answered by the plaintiff by showing that the closing of this bar would not have prevented this barrel from rolling into the well, and that it was closed by a fellow-servant, and that the injury was in no way influenced by the bar being left open.

It is also urged, on the part of the defendant, that it was negligence for the deceased to allow his head to get in range of the side of the well or shaft, as by so doing he exposed himself to be hit by any falling substance, to which the plaintiff replies that deceased was giving attention to his work and could not be expected to anticipate danger from defendant's allowing empty barrels to roll over the floor of the building and thence into the well and upon intestate. These questions being in the case, and, as we think, bearing in a greater or less degree upon the disputed fact of the plaintiff's intestate's contributory negligence or freedom from the same, they were proper subjects for the consideration of the jury upon that question. (*Kelly* v. *N. Y. C. and H. R. R. R. Co.*, 9 N. Y. Supp., 90; *Pitcher* v. *Lake Shore and M. S. Ry. Co.*, 8 id., 389.) If, therefore, this was a proper case for the jury, it was error for the learned judge to take it from them, unless, as it is insisted by the defendant, the plaintiff's intestate in entering upon this employment assumed all the risk incident to the employment, without regard to the question as to whether or not the master had provided a reasonably safe place for the performance of the work. This brings us to the consideration of the third question suggested above. Did the deceased, as matter of

law assume the risk of the injury he suffered by reason of accepting the employment in which he was engaged at the time of the accident? The general rule is well settled, that where the master performs his whole duty to his servant in furnishing a reasonably safe place and suitable and reasonably safe tools, implements and appliances for the performance of the work, the servant takes all the risk incident to the performance of the service he undertakes to perform. The defendant insists that the plaintiff's intestate having voluntarily continued his employment in the mill, with the knowledge of the fact that there were no automatic doors to the elevator, that all known and obvious dangers arising from the absence of such doors were assumed by him and that the plaintiff cannot for that reason recover.

The case does not in express terms show that the deceased had notice of or knew that automatic doors had not been placed in position to close the well at each floor, after the elevator passed, but I think, from the frequency with which he passed up and down on the elevator, it is fair to presume that he was cognizant of that fact or, at least, had such ample opportunity to see the defect that he is chargeable with knowledge in the absence of proof to the contrary. There is no proof that the deceased had knowledge that loose barrels were left on the upper or first floor in such a position that the vibration of the mill from the working of the heavy machinery might be set in motion, and thus precipitated through the elevator hole in the upper floor, and down upon the deceased, while engaged in his legitimate duties at the bottom of the well or on the lower floor of the mill.

That condition of insecurity does not appear to have been known to him, nor could it be discovered by him while engaged in the heavy and difficult task of loading the grindstone, and it bore expressly upon the question of the safety of the position furnished by the master for the performance of the work by the servant.

I do not see, with that condition existing, how it can be said, as matter of law, that the master in this case furnished a reasonably safe place for his employee to work. What was a reasonably safe place, it seems to us under the circumstances of this case, was a question of fact for the jury; and whether this was such a place should, it seems to us, have been submitted under the evidence as a question of fact for their consideration and determination.

We have been referred by the learned counsel for the respondent to a great number of cases upon this branch of the case, but an examination of them will show that in all, or nearly all, of them the servant had knowledge of the dangerous conditions to which he was exposed which produced the injury. In *Fitzgerald* v. *The New York and Hudson River Railroad Company* (36 N. Y. St. Rep., 755), the deceased was hit by a bridge while standing on a freight car in motion. But it appeared that he had had his attention called to the bridge on previous occasions, and it was held that he could not recover, chiefly on the ground that he knew of the danger, and forgetting or not heeding it at the time was negligence in him.

In *Schwartz* v. *Cornell* (36 N. Y. St. Rep., 646) the plaintiff's intestate, who was an iron-worker and builder, while at work on a roof fell through the hole in the roof, which was not left there by any negligence of the defendant, the existence of which was known to and plainly perceivable by the intestate. In an action by his administrator he was nonsuited and the nonsuit was sustained on appeal, and the court uses this language : " We do not see how the defendant can be held liable in this case, without abolishing the well-established rule that the servant by accepting the employment assumes the risk and perils incident thereto, so far as they are apparent and obvious."

It will be observed in this case everything was open and obvious to the employee ; there was no barrel out of sight in another room not seen by or known to the servant which jeopardized his life. If in this case the deceased, with a full knowledge that the elevator-well was open and unguarded, had fallen through and been injured, as in the case put by the learned trial judge, it is quite likely he would be without remedy, as in that case he would be held to have known just the risk he ran, and have contracted in reference to that risk. But this is not that case. Here, in addition to the fact that the well was not closed by automatic doors, which may be assumed to have been within the knowledge of the deceased, was another concurring, if not an immediate, cause of the accident, which is not shown to have been brought within the knowledge of the deceased. The barrel which fell upon the deceased was left in a position which affected the safety of the place fur-

nished by the defendant for the performance of the work in which the deceased was engaged, of which the plaintiff's intestate, so far as the evidence discloses, had no knowledge, and from which the jury might have found the defendant guilty of negligence contributory to the injury for which the intestate was in no way responsible.

If this risk related to the safety of the place of the employment, and not to the dangerous character of the employment itself, then it was the risk of the master, and not that of the servant; for while the deceased took upon himself the risk of the dangerous character of the service, the employer assumed the risk and duty of furnishing a reasonably safe place for the performance of that service. (*Cullen* v. *Norton*, 52 Hun, 11; *Pantzar* v. *The Tilly Foster Iron Manufacturing Co.*, 99 N. Y., 368.) We think, therefore, under the circumstances of this case, the question whether the deceased had knowledge of the danger caused by the defendant's allowing a barrel to stand upon the mill floor in such a manner as to be rolled into the well hole by the jarring of the mill, and thus rendering it unsafe to work upon the platform of the elevator when on the lower floor, was one for the jury.

But it is insisted that even if the leaving of the barrel upon the upper floor in such a manner as that it fell upon the plaintiff's intestate and thus produced the injury was an act of negligence, still it was the act of a fellow-servant and the defendant is not liable. In this contention we cannot agree with the learned counsel for the respondent. If placing a barrel on the top floor, under the circumstances of this case, was negligence, it was negligence affecting the safety of the place where the work was being done, and not the character of the employment, for which alone the master is responsible. In *Cullen* v. *Norton* (*supra*), LANDON, J., in discussing this question, says: "One of the duties of the master was to furnish his servant a safe and proper place, in which to prosecute his work. This duty continued to be the master's, no matter to what subordinate servant he delegated its performance. The defendant's foreman was intrusted with its performance, and hence stood in place of, and represented, the master in assigning the servant to his fatal place of labor. If it was negligence to assign him to this place, the negligence was the master's." It is

true that this case was reversed in the Court of Appeals (36 N. Y., St. Rep., 359), on the ground that the principle there stated did not apply to that case, but the doctrine was not overruled. For the reason above stated, we think the case was one for the jury, and the refusal of the learned trial judge to submit it to them was error, for which the judgment should be reversed.

LEARNED, P. J., concurred; LANDON, J., concurred in result.

Judgment reversed, new trial granted, costs to abide the event.