SARAH M. SIMMONS, Appellant, *v.* CATHERINE A. PETERS, Respondent.

85 93
4ap487
85 93
20ap252
85 93
32ap564
85h 93
53ad500

*Damages for personal injuries — risks occasioned by defects in an elevator — when unknown they are not assumed by an employee.*

If, upon the trial of an action brought to recover damages resulting from personal injuries sustained by reason of the defendant's alleged negligence, the evidence is sufficient to justify the jury in finding that the plaintiff had no knowledge of the defects and insufficiencies in the appliances and surroundings of an elevator in use upon her employer's, the defendant's, premises, by reason of the defective condition of which she sustained the injuries complained of, it is error for the trial court to hold as a matter of law that the plaintiff assumed the risk arising out of such defects and deficiencies.

APPEAL by the plaintiff, Sarah M. Simmons, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 10th day of November, 1893, upon the dismissal of the complaint directed by the court after a trial before the court and a jury at the Onondaga Circuit.

*White & Cheney,* for the appellant.

*W. S. Andrews,* for the respondent.

HARDIN, P. J.:

Defendant was engaged in the manufacture of shirts on Noxon street in the city of Syracuse on the 7th of April, 1890, the business being under the supervision of her husband, Henry Peters. She occupied half the basement, half the first floor and the whole of the fourth floor. On the morning of April 7, 1890, which was a dark, rainy morning, Brown, one of defendant's employees, having reached the store shortly after seven o'clock, found the elevator door closed and locked. While he was unlocking the door the plaintiff and her two daughters and Miss Garthe and Miss Washner entered the building; they advanced toward the elevator, some eighteen and a half feet distant from where they entered the building, and at that moment Brown called out to them to hurry, and he opened the elevator door, stepped inside and reached for the cable, so as to bring the elevator car down, which was on the fourth floor. As he swung into the elevator, he seems to have been partially, if not wholly, out of sight of the plaintiff, who was then some nine feet distant from him, and when he reappeared the plaintiff was some four or five feet distant from him. Brown was about three or four feet from the door when she walked in. Brown, on taking hold of the cable, discovered that the elevator was locked at the fourth floor, and, as he turned and stood in the doorway facing the women with his back against the casing, his right hand was on the cable and his left holding the door, which had closed against his arm. The door was open about two and a half feet. The plaintiff continued to walk steadily forward. Miss Garthe had a wet umbrella, and she jokingly spattered some drops of water on Brown, and he let go his hold upon the cable and the door and turned from the elevator, suddenly took a step or two from the doorway and

seized the umbrella. The plaintiff advancing, in the absence of gas-light, reached the elevator, stopped and looked ahead, saw the door standing open, and, supposing that she saw the elevator car, walked in and fell a distance of some twelve feet into the cellar, breaking her leg, from which resulted an amputation, and sustaining injuries for which this action was brought. The door stood about two and a half feet open at the time she passed in. There was some evidence tending to show that the door was stuck on the uneven and worn shoulder. She had ridden upon the elevator on previous occasions, and on no occasion had she seen the door open except when the elevator car was at the landing. She had in one hand at the time she entered the building a dinner box, and in the other a can of coffee, and did not herself touch the door. She had been accustomed to use the elevator with some forty other women for approach to the fourth floor, where she was engaged in the performance of her duties, and apparently from her experience and observation of such use she supposed that when the door was open it indicated that the elevator was present. It appears in the evidence that the husband of the defendant had previously received a warning that the condition of the elevator door was defective. He at that time was acting as manager for his wife, and as such was carrying on the business, and he knew that the door did not have automatic attachments, and had seen the elevator door remain partly open on some occasions. There is no exact evidence as to the length of time that elapsed from the moment when Brown stepped away from the door and the moment when plaintiff fell. There is evidence to the effect that from the time Brown stepped out of the opening and the time when the plaintiff walked in, the door remained in a stationary position, leaving an opening of about two and a half feet, and that the door was stationary when the plaintiff passed into the opening.

In chapter 462 of the Laws of 1887, in section 8, it is provided as follows: "It shall be the duty of the owner, agent or lessee of any manufacturing establishment where hoisting shafts or well holes are used, to cause the same to be properly and substantially enclosed or secured, if, in the opinion of the inspector, it is necessary to protect the life or limbs of those employed in such establishments. It shall also be the duty of the owner, agent or lessee to provide, or cause to be provided, such proper trap or automatic doors, so fas-

tened in or at all elevator ways as to form a substantial surface when closed, and so constructed as to open and close by action of the elevator in its passage, either ascending or descending." The evidence warranted a finding by the jury that the statute had not been complied with by the defendant.

Guetig, the factory inspector, who had been, in the discharge of his duty, upon the premises of the defendant and made an examination of the door, testified as follows, viz. : "I worked the door myself ; it didn't work; I opened it ; it didn't close when the elevator left it ; it was not closed at the time ; it was open when I came there. * * * The door itself and its connections had no connection with the elevator ; * * * an automatic door on an elevator is a door that works by the action of the elevator itself, either going up or coming down opens the elevator door when it strikes a landing, and closes it when it leaves it, a door which is governed and held in place by the action of the elevator in its motion ascending or descending." The witness added, "Then there are others that have trap doors that open or shut. * * * There always must be a weight to close them."

The evidence shows that the defendant's elevator door was hung by iron supports to wheels resting on the tracks moving in grooves. The track inclined toward the shutting of the door, and the door, if it followed the incline downward, would shut. It was about six feet in width and six and a half to seven feet high, and the sill was a solid board grooved out so as to leave a shoulder on each side. Trucks were used on the ground floor for wheeling goods, and they were wheeled across the sills into the elevator, and they had slivered the shoulder and worn it down so that it had become uneven, rounded, and would allow the door to catch. "As the door approached being shut, it would gradually go down into this groove, and the shoulders being worn off, it didn't run perfectly straight. It would catch on those shoulders and stop, the lower edge of the door, instead of shutting, and would then stand partly open without any one's holding it." That condition of things had existed some six months prior to the accident. It appeared in the evidence that "before the time of the accident there was no person whose business it was to operate the elevator regularly ; " and that, "there was no published or oral rules with reference to its operation." Whether the

defendant was guilty of negligence which contributed to the injury received by the plaintiff, and whether the plaintiff was free of contributory negligence, were questions of fact which should have been submitted to the jury. (*Freeman* v. *Glens Falls Paper Co.*, 39 N. Y. St. Repr. 621; *Tousey* v. *Roberts*, 114 N. Y. 316; *Peil* v. *Reinhart*, 127 id. 381; *Morrison* v. *The Metropolitan Telephone Co.*, 52 N. Y. St. Repr. 603.) But it is contended by the respondent that the plaintiff assumed any risk that might be caused by the defects and insufficiencies of the approaches and appliances in and about the elevator. It appears by the evidence that she had been for some five months in the employ of the defendant and had most of that time used the elevator in the morning and evening, as she had occasion to approach and leave the room on the fourth floor, where she was engaged in the performance of her duties for the defendant.

Plaintiff testified: "I knew nothing about the appliances the elevator had or didn't have to cause it to open or shut. I never saw the door open only when the elevator was there, and somebody there to hold it open. I had never seen it standing open without anybody holding it as upon this morning."

In *Benzing* v. *Steinway & Sons* (101 N. Y. 547) it was said: "The risks of the service which a servant assumes in entering the employment of a master are those only which occur, after the due performance by the employer of those duties which the law enjoins upon him." (*Ford* v. *L. S. & M. S. R. R. Co.*, 124 N. Y. 493.) The rule is restated in *Abel* v. *D. & H. C. Co.* (128 N. Y. 662); *Pantzar* v. *Tilly Foster Iron Mining Co.* (99 id. 369); *Davidson* v. *Cornell* (132 id. 234).

In *Knisley* v. *Pratt* (75 Hun, 323) allusion was made to the rule in the following language: "A servant who enters the employ of a master assumes the risk incident to such employment, where the dangerous structures or implements are open and visible *and known to him*, but in case the employer owes such employee a duty which is not discharged and is guilty of negligence in not performing such duty, if the injury is the result of such neglect of duty, the risk is not one which is assumed by the servant." We think it should not be stated "as matter of law that under the facts of the present

case the plaintiff assumed the risk." (*Warn* v. *N. Y. C. & H. R. R. R. Co.*, 80 Hun, 71.)

In *Simpson* v. *New York Rubber Co.* (80 Hun, 415) the rule is again stated and a majority of the court held in that case that a party, "knowing that the machinery is not guarded as prescribed by statute, does not waive the provisions of the statute, nor does he assume such obvious risks as are incident to the use of the machinery without the required safeguards." In that case the plaintiff knew of the defects and continued in the employ, and the trial court refused to charge that he waived the provisions of the statute and assumed such obvious risks as were incident to the use of the machinery in that condition, and a majority of the court at General Term approved of the refusal to so charge. In the case in hand the evidence was sufficient to justify the jury in finding that the plaintiff had no knowledge of the defects and insufficiencies in regard to the appliances and surroundings of the elevator in use upon defendant's premises. Under such circumstances we think it was error to hold as matter of law, as apparently the trial judge did, that the plaintiff assumed the risks occasioned by such defects and deficiencies.

The case of *Cullen* v. *Norton* (36 N. Y. St. Repr. 359) differs from the case in hand. There the accident resulted from a negligent act done in the very course of the work and by a fellow-workman of the deceased. The master had provided a competent and experienced foreman, who had been in his employ a number of years and was not chargeable with the consequences " of a place for work made dangerous only by the carelessness and neglect of a fellow-servant."

We think the nonsuit was erroneously granted.

MARTIN and MERWIN, JJ., concurred.

Judgment and order reversed on the exceptions and a new trial ordered, with costs to abide the event.