### PITCHER *v.* LAKE SHORE & M. S. RY. CO.

*(Supreme Court, General Term, Fifth Department. October 23, 1891.)*

1. INJURY TO PASSENGERS—NEGLIGENCE.

Plaintiff was in charge of a car-load of horses. Before arriving at B., the conductor told plaintiff that the caboose would go no further than B., and that plaintiff would thereafter have to ride in the car with his horses; that at B. the train would stand for 45 minutes where left, and that plaintiff could get supper, and then take the train. At B. plaintiff left the train for supper, and returned in about 30 minutes, when the train had been shifted two tracks further off, and a locomotive attached to its rear. To get on the train, plaintiff had to walk around such engine by a passage used by defendant only in connection with its cattle-yards. He passed close to the engineer, who was looking in the direction plaintiff was going. While entering the car by the side door, the train started, injuring plaintiff. *Held,* that the question of defendant's negligence was for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.

It was not negligence in plaintiff to attempt to enter the door on the side of the car instead of the one at the end, when the evidence showed that the end door

was used in cases of emergency only, or when the drovers had occasion to enter the car while the train was in motion.

**3. SAME.**

It was immaterial that the engineer at the rear of the train was not the one who brought the train into B.

**4. SAME—LIMITING LIABILITY.**

Plaintiff was riding on a ticket issued to drovers, and which contained a clause that, if the person in charge of the stock should leave the caboose and pass along the train or track, it was at his own risk of personal injury. *Held,* that this did not relieve defendant of its liability.

DWIGHT, P. J., dissenting.

Appeal from circuit court, Erie county.

Action by C. Frank Pitcher against the Lake Shore & Michigan Southern Railway Company for personal injuries while in charge of a car-load of horses being conveyed from Michigan to Boston. Verdict and judgment for plaintiff. Defendant moved for a new trial, which was denied; and from the judgment, and the order denying the motion, defendant appeals. Affirmed.

For former report, see 8 N. Y. Supp. 390.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*James Fraser Gluck,* for appellant. *Norris Morey,* for respondent.

MACOMBER, J. When this case was before us upon a motion for a new trial in behalf of the plaintiff, after a nonsuit, it was held that there was sufficient evidence to submit the question of the defendant's negligence and the plaintiff's want of negligence to the jury. *Pitcher* v. *Railway Co.*, (Sup.) 8 N. Y. Supp. 389. Upon the second trial evidence was given in behalf of the defendant, touching the matters under review upon the first hearing, and it is upon such testimony that the learned counsel for the appellant now claims that the case is materially different in its legal aspects from the one which was formerly presented to us. Unless this contention of the learned counsel appears to be correct, we must adhere to our former conclusions. The plaintiff, while riding upon the freight train of the defendant, had in charge 19 horses for his employers, who lived in Boston, Mass., and was making a continuous trip from Tecumseh, Mich., to Boston. He arrived in Buffalo, July 12, 1887. Before arriving there, on conference with the conductor of the train, he was informed that he would have ample time to leave his charge, and go to the Crandall House, and get his supper, and that the train would remain on the track, where he would leave it for a period of 45 minutes, and that he could return to the train at any time during that period. The plaintiff had no passage ticket, but was traveling upon a ticket issued in the usual form to drovers, or persons in charge of horses, and it contained the following clause: "That whenever the person or persons accompanying said stock under this contract, to take care of the same, shall leave the caboose, and pass over or along the cars or track of said first party, or of connecting carriers, they shall do so at their own sole risk of personal injury, from whatever cause; and neither the said first party, nor its connecting carriers, shall be required to stop or start its trains or caboose-cars at or from the depots or platforms, or to furnish lights for the accommodation or safety of the persons accompanying said stock to take care of the same, under this contract." This provision of the contract does not, in our judgment, in any respect, vary the facts, from which, upon the former hearing, we adjudged that the plaintiff was a passenger upon the defendant's road, to whom there was owing all due diligence from protection and harm while riding upon the railroad, or while engaged in the care of his horses. See cases cited upon the former hearing, and the limitation of such rule there stated.

When the plaintiff left the train, it was under information imparted to him by the conductor that the caboose in which he had ridden from Tecumseh to Buffalo would go no further, but that he must ride thereafter in a car

occupied by his horses. With this information, and with the assurance that the train would be upon the track for him to board at any time within 45 minutes, the plaintiff proceeded to his supper at the Crandall House, where he remained from 25 to 30 minutes. On his return, he found that the train had been shifted two tracks further off, and that a locomotive had been placed at the rear end of the train for the purpose of backing the same to other yards of the defendant. It appears upon this trial, as it did upon the former, that there were electric lights upon the side of the train facing the Crandall House, but that in order to get aboard the car it was necessary for him to pass around the locomotive, which then stood partly across a road-way into the defendant's stock-yards. The plaintiff testified that in passing around the locomotive he came within two or three feet of the engineer, who seemed to be looking towards the rear of his train. The plaintiff was then carrying his hand-bag. He does not testify positively that the engineer saw him, nor did he so testify upon the former trial. The engineer himself testified that he did not see the plaintiff. On coming to the car, into which he intended to pass, he placed his bag in the door, and taking hold of the handle, with his right foot in a sort of stirrup, he was lifting himself into the car, when, by a sudden and unexpected backward jerk of the train, his leg came in contact with a chute close to the outer edge of the car, which resulted in such injuries to it as to require its amputation. No warning was given of the movement of the train.

The learned trial justice submitted the question to the jury whether or not it was not the duty of the defendant, under the circumstances, to give some warning to the plaintiff, so that he should not incur the dangers of entering the car at that place, of which danger he had no previous knowledge or information. In this ruling we think the learned justice was correct. It was left to the jury to say whether or not the engineer saw the plaintiff passing around the engine with a hand-bag, under such circumstances as indicated the purpose of the latter to board the train.

It now appears, a circumstance which in this respect is different from the other case, that the present engineer was not the same one who had brought the train into Buffalo. But, under the evidence given by the plaintiff of his arrangement made with the conductor, this circumstance cannot be deemed of importance. On the other trial, the plaintiff testified that the engineer seemed to be looking at him as he passed around the locomotive. On the present trial he does not use the same language, but he says that the engineer seemed to be looking eastward down the train where the plaintiff was going to take his car. It is now argued by counsel for the appellant that there was nothing in the situation to call the attention of the engineer to the plaintiff, or to lead him to think that it was the purpose of the latter to get aboard the train; for, as is argued, people were accustomed to pass at this point. It is not, indeed, contended that this was a public highway. On the contrary, it is conceded that it was a way made solely for the uses and purposes of the railway company in giving ingress and egress from its cattle-yards. It was not a highway either for persons on foot or in carriages. If, indeed, it be true, as the jury may have found, that the engineer must have seen the plaintiff passing around the locomotive with his hand-bag in his hand at the time of evening stated, to-wit, between half past 8 and 9 o'clock, the reasonable inference to be drawn by the engineer would have been that it was the purpose of the plaintiff to board the train, and that he was apparently a passenger having live-stock in charge. Yet the right of the plaintiff to recover is not solely based upon this inference which the jury may have drawn of the actual observation of the plaintiff by the engineer; for, under the testimony given by the plaintiff relating to his conversation with the conductor at the time of leaving the train on the arrival in front of the Crandall House, the plaintiff, being unaccustomed to that locality, had a right to assume that it would be safe for him

at any time to enter the car containing his horses within the three-quarters of an hour limited to him by the conductor. It may be said, however, that this arrangement did not preclude the company from shifting the train to another track, if the needs of its service required it. This, undoubtedly, is true. But whether the train was upon the track where the plaintiff originally left it, or upon any other track in that vicinity, the plaintiff had a right to assume that the directions given to him by the conductor, namely, that he could no longer ride in the caboose, but must enter the car containing the horses, might be complied with at any place where he found the car within the time named.

The contention made by the counsel for the appellant, that the proper place for the drover to get in and out of the car was at the ends and not at the side door, is not sustained by the evidence. The entrances at the ends of the car seem to be made exclusively for the use of the drovers and their assistants in cases of emergency, or when they have occasion to go to the car while the train is in motion, passing from the caboose by means of rungs in the car to a transom-like door in the upper part of the freight car, to which, in case of need, they may pass to give heed to their animals. The case, consequently, which is now presented to us, does not differ in its material parts from the one originally presented upon the plaintiff's proofs alone, when it was held to be one to be decided by the jury. The jury, under a charge in all respects clear and fair to the defendant, has found a verdict for the plaintiff, which we do not feel at liberty to disturb for any of the alleged errors upon the trial, or upon the ground that it is excessive; and the judgment entered thereon should, for the reasons above stated, be affirmed. Judgment and order appealed from affirmed.

DWIGHT, P. J., dissenting.