CHICAGO, ST. P., M. & O. RY. CO. v. ELLIOTT.

(Circuit Court of Appeals, Eighth Circuit. May 15, 1893.)

No. 191.

1. NEGLIGENCE—ACTION FOR INJURY.
   An injury that is the natural and probable consequence of an act of negligence is actionable.

2. SAME—REMOTE CAUSE.
   An injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable.

3. SAME—NATURAL CONSEQUENCE OF ACT.
   An injury that is not the natural consequence of an act of negligence, and that would not have resulted from it but for the interposition of a new and independent cause, is not actionable.

4. SAME.
   An injury that is the result of many fortuitous circumstances, no one of which can be fairly said to have been its proximate cause, is an accident, and is not actionable.

5. SAME.
   If the plaintiff fails to show that the negligence with which he charges the defendant was the proximate cause of the injury he cannot recover.

6. SAME—PROXIMATE CAUSE.
   Plaintiff was in charge of certain stock shipped by rail, and was riding in the caboose. Before reaching a certain station, where he knew it was usual to change cabooses, he asked the conductor if a change would

be made there, and was answered in the negative, and told that the train would only stop a few moments, and he would have no time to examine his stock. On reaching the station, however, he got off, walked forward, and examined several cars of the stock, and then turned back, but, the train having already started, he feared he would be unable to board the caboose, and therefore climbed upon a stock car, and walked backward along the top of the train. Before he reached the caboose the train had stopped, and was backing for the purpose of changing the caboose, and it was kicked off from the train just as he was stepping upon it, causing him to fall to the track, where his foot was crushed by a wheel. *Held,* that the statement of the conductor that the caboose would not be changed was not the proximate cause of the injury, and it was error to allow evidence thereof to go to the jury.

In Error to the Circuit Court of the United States for the District of Minnesota. Reversed.

Thomas Wilson, (S. L. Perrin, on the brief,) for plaintiff in error.
Frank F. Davis, (Henry M. Farnam, on the brief,) for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge. The Chicago, St. Paul, Minneapolis & Omaha Railway Company brings this writ of error to reverse a judgment of $5,000 recovered by Fred. P. Elliott, the defendant in error, who was the plaintiff below, for personal injuries which he alleges resulted to him from the negligence of the company. The railway company had made a contract with J. B. Sutphin & Co., a copartnership, to transport 13 car loads of sheep from West Superior, Wis., to Chicago, Ill., and to carry the plaintiff, who was their foreman in charge of the sheep, free. Spooner is a station on the defendant's railroad between West Superior and Chicago, about 60 miles south of West Superior. It is the head of a division. There is a railroad yard at this point, and the custom of the company is to change the crews, engines, and cabooses of freight trains at this station. Altoona is a station on the defendant's railroad about 100 miles south of Spooner. The train which carried the sheep left West Superior at 11 o'clock in the forenoon on January 28, 1891. It then consisted of the engine, the 13 cars of sheep, and a caboose. At a station about 25 miles south of West Superior two cars of dead freight were put into the train, three cars from the engine. The train arrived at Spooner at 3 o'clock in the afternoon.

The plaintiff, Elliott, boarded this train at East Superior, a station a few miles southeast of West Superior, and rode free, under the contract with Sutphin & Co., in the caboose, from East Superior to Spooner. He was familiar with the railroad, the location of Spooner, and its railroad yards; knew that it was the custom of the company to change crews and cabooses at that station; had made at least three trips over this road before, and knew how the train was made up. When the train stopped at Spooner he alighted, and commenced, at the car next to the caboose, to examine and

care for the sheep. He walked forward along the train for at least ten minutes, and had examined all of the sheep but the two carloads next to the engine, when the conductor of the train brought him his lunch. He took this, and started back alongside of the train to carry it to the caboose, when the train started south, and when he was about seven cars from its rear it was moving so rapidly that he thought he could not board the caboose, and thereupon he grasped the ladder upon one of the stock cars, ascended it, and commenced to walk back, upon the top of the cars, towards the caboose. The employes of the company were then switching the train for the purpose of changing the caboose. For this purpose they drew it south past a switch, so that they could send the caboose in on another track, uncoupled it, backed the train up sufficiently to send the caboose in upon this second track, and then pulled the balance of the train forward, leaving the caboose. When the train had passed south of the switch, and commenced to back, the plaintiff was three or four cars from the caboose. He knew the train was backing north, and could not go to Chicago in that direction, but he still walked on towards the caboose; and, just as he was stepping from the last stock car to it, the latter was kicked off from the train, and he fell to the ground, where his foot was crushed by one of the wheels of the rear stock car, which was still moving back very slowly.

In the movement and handling of the train at Spooner there was no negligence on the part of the defendant, unless it arose from the following facts, which were proved over the defendant's objection: The plaintiff, while riding in the caboose between West Superior and Spooner, asked the conductor if he would change cabooses at Spooner, and the latter replied that he would not, that there was no extra crew at Spooner, and that he would run through to Altoona. Shortly after the conductor asked him if he would want anything to eat at Spooner. He replied that he would like to get dinner, and look over the sheep, if he had time, and the conductor said: "You won't have time for that. We won't stay there over five minutes,—just long enough to change engines. The caboose and crew will go to Altoona." The plaintiff knew that the conductor was running the train under orders from superior officers, and that his orders were liable to be changed at any time; but in ascending the car, walking back towards, and attempting to step upon, the caboose, he relied upon the assurance of the conductor that that car would not be changed, and when he climbed upon the stock car he supposed that the train was going out for Chicago. The admission of the evidence of these conversations, and of plaintiff's reliance upon them, is the principal error assigned, and the ground of the error is that these were not the proximate cause of the injury.

The rule of law which governs this case is not difficult of statement, but, like many other rules, the difficulty is solely in its application. "Causa proxima non remota spectatur." An injury that is the natural and probable consequence of an act of negligence is actionable. But an injury that could not have been foreseen or reasonably anticipated as the probable result of the negligence

is not actionable, nor is an injury that is not the natural con-sequence of the negligence complained of, and would not have resulted from it, but for the interposition of some new, independent cause, that could not have been anticipated. Obviously, the relations of causes to their effects differ so widely, and are so various, that no fixed line can be drawn, that will in each case divide the proximate from the remote cause. The best that can be done is to carefully apply the rule of law to the circumstances of each case, as it arises. The effect sometimes follows immediately upon its moving and proximate cause, and, again, that cause works out its effect with unerring accuracy after a long period of time. A brakeman carelessly jostles a passenger from a moving train, and the effect follows at once. A tenant carelessly sows thistles in his landlord's field, and the effect follows months later, but not less surely. Again, an effect is sometimes the result of many fortuitous circumstances, no one of which can be fairly said to have been its proximate or moving cause; in other words, it is an accident,—a result that no one knowing the circumstances before the catastrophe could have reasonably anticipated. If an injury is the result of such an accident, or if the plaintiff fails to show that the negligence with which he charges the defendant was the proximate cause of the injury, there can be no recovery in his favor.

In Railway Co. v. Kellogg, 94 U. S. 469, 475, Mr. Justice Strong, speaking for the supreme court, said:

"It is admitted that the rule is difficult of application. But it is generally held that in order to warrant a finding that the negligence, or an act not amounting to wanton wrong, is the proximate cause of the injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen, in the light of the attending circumstances."

In Hoag v. Railroad Co., 85 Pa. St. 293, 298, 299, the supreme court of Pennsylvania said:

"The true rule is that the injury must be the natural and probable consequence of the negligence,—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrong-doer, as likely to flow from the act."

The question in this case, then, is, was it the natural and probable consequence of the statement made by the conductor, that he would not change cabooses, and would not stop more than five minutes, at Spooner,—was it reasonably to be anticipated from this statement that the plaintiff, after the train had stopped at that station ten minutes, would climb upon the top of the cars, and be in the act of stepping from the rear stock car to the caboose at the very instant that the latter was kicked off the train?

A probable consequence is one that is more likely to follow its supposed cause than it is to fail to follow it. Was there one chance in a hundred that this drover, in reliance on such a statement, would climb upon this train, and so time his movements as to step off the rear stock car at the very instant the caboose parted from it? We think not. If he had alighted from the caboose, or climbed the car, or made any of his movements, after the train stopped at Spooner, 30 seconds earlier or later than

he did, he would not have been injured. If, at the end of the five minutes he was told that the train was to remain at Spooner, he had returned to the caboose; if he had not climbed upon the train; if, when he knew the train was backing up the other track, he had stopped to learn what was being done with it; indeed, if he had done anything but that which he did do, or if he had done that at any other instant of time than that at which he did do it,—he would not have been injured.

The natural consequence of an act is the consequence which ordinarily follows from it,—the result which may reasonably be anticipated from it. Perhaps the conductor might reasonably have anticipated that this drover would leave his personal baggage in the caboose, possibly he might have anticipated that he would remain there himself in reliance upon the assurance that the caboose would not be changed at Spooner, and if he had done either of these acts the defendant might be liable for any resulting injury; but who could anticipate that he would climb upon the cars, and put one foot on the rear stock car, and the other in the air, ready to descend upon the caboose, after the train had remained in the yard 10 minutes, and was backing up another track, and at the very instant when the caboose was being separated from it? No one, in our opinion, could have anticipated such an effect from so remote a cause. It was far from such a result as might or ought to have been foreseen by the conductor as likely to flow from his act, and it was error, in our opinion, to submit the evidence relating to these conversations to the consideration of the jury.

The authorities to which we are referred by counsel for defendant in error do not lead to a different conclusion. The three cases upon which he chiefly relies are Railroad Co. v. Winter, 143 U. S. 60, 12 Sup. Ct. Rep. 356; Pitcher v. Railroad Co., (Sup.) 16 N. Y. Supp. 62; and Olson v. Railway Co., 45 Minn. 536, 48 N. W. Rep. 445. In the first case the passenger, Winter, informed the ticket agent when he bought his ticket that he wished to stop over at the intermediate station of Olean, and was told to speak to the conductor. He informed the conductor, who punched his ticket, and was told by him that the punched ticket entitled him to stop over, and to ride upon a later train. He stopped at Olean, took a later train for his destination, presented his punched ticket, and the conductor of the train refused to accept it, and ejected him. In the second case the conductor of a freight train informed Pitcher, a drover in charge of a car load of horses, that the caboose in which he was riding would go no further than the next station; that from that station he would have to ride in the car with his horses; that the train would stand 45 minutes at the place where it would be left on its arrival at that station; and that he could go to the hotel, and get his supper. He did so, and in about 30 minutes after the train had arrived he returned, and was in the act of climbing into the car where his horses were, when the train, which had been placed on another track, was started with a sudden jerk, without warning, and he was injured. In the third case the plaintiff, Olson, who was a drover in charge of a car load of horses, informed the conductor that one of his horses was loose

in the car, and asked him if it would be safe for him to go in, and tie him. The conductor said: "Yes; you are perfectly safe, for the train is not going to stir before the passenger comes up." Immediately, and before the passenger came up, Olson went between the cars, climbed up over the couplings, slid back the door in the end of the car, which was the only means of ingress to it, and was in the act of entering when the train started with a sudden jerk, and injured him. These are the strongest cases cited for the defendant in error, and they certainly bear no analogy to the case at bar. In Winter's Case, the natural effect of the assurances of the ticket agent and conductor was that he would rely on his punched ticket, and try to ride on it, after he stopped at Olean; and his ejection, and the injury resulting from it, were the natural consequences of these representations, and the act of the conductor who refused to accept his ticket. In Pitcher's Case, after the conductor had informed him that the train would stand still for 45 minutes, and directed him to get into the car with his horses, that conductor could have anticipated, and ought to have anticipated, that this drover would climb into his car during that 45 minutes, and that if the train was started without warning during that time he might be injured. In Olson's Case, after the conductor was expressly told that he was about to climb into the car, he might and ought to have foreseen that the natural and probable consequence of his assurance that the train would not stir, and its sudden start without warning, as Olson climbed between the cars in reliance upon his statement, would be his fall and injury.

In each of these cases the plaintiffs followed courses of action that they would naturally be expected to pursue. They placed themselves in the positions they had fairly notified the conductors they intended to take, and the injuries were the natural and probable consequences of the acts of the employes of the railroad companies. If the plaintiff here had informed the conductor that he intended to walk from the rear stock car to the caboose, or to stand with one foot on each while the train remained at Spooner, and then had asked him if he intended to change cabooses, and if it would be safe for him to so walk or stand, the conductor might reasonably have anticipated the unfortunate result, but nothing less would have warned him of so improbable an event.

If authorities are wanted in support of our views, they are: Railroad Co. v. Reeves, 10 Wall. 176; Scheffer v. Railroad Co., 105 U. S. 249, 252; Jenks v. Inhabitants of Wilbraham, 11 Gray, 142; Durham v. Musselman, 2 Blackf. 96; Morrison v. Davis, 20 Pa. St. 171; Denny v. Railroad Co., 13 Gray, 481; Dubuque Wood & Coal Ass'n v. City and County of Dubuque, 30 Iowa, 176; Hoag v. Railroad Co., 85 Pa. St. 293, 298, 299; West Mahanoy Tp. v. Watson, 112 Pa. St. 574, 3 Atl. Rep. 866; Read v. Nichols, 118 N. Y. 224, 23 N. E. Rep. 468; Railway v. Mutch, (Ala.) 11 South. Rep. 894.

In Durham v. Musselman, supra, the defendant girdled a large tree, and then set a fire around it, and left it burning, so that the tree was liable to fall at any time. The plaintiff's mare and colt wandered under the tree, and it fell upon and killed them, but the

supreme court of Indiana said, "the destruction of the cattle of others is not the natural and probable consequence of such a practice," and refused to permit the plaintiff to recover. In Jencks v. Inhabitants of Wilbraham, supra, the plaintiff wrenched the wheel and axle of his wagon in a bad hole in the road, but he pulled it out, got off his load, and examined it, then drew his loaded wagon over a muddy road for some distance, until, as he was riding on his load along a plain and level road, the axle broke, precipitated him to the ground, and injured his spine. The supreme judicial court of Massachusetts held that the defendant was liable for the damage to the wagon as it was when he hauled it from the hole to the place where he examined it, but that it was not liable for his personal injuries, because his subsequent proceedings constituted an independent, intervening cause, and the defect in the road was too remote a cause to charge with these injuries. In Railroad Co. v. Reeves, supra, the Memphis & Charleston Railroad Company received tobacco at Chattanooga, Tenn., on March 5, 1867, to be transported to Memphis. The agent of the railroad company assured the plaintiff's agent on that day that the tobacco should go forward at 6 o'clock that afternoon, and if it had been forwarded at that time it would not have been injured. In reliance upon this statement the plaintiff's agent left Chattanooga that afternoon, so that he could not subsequently look after the tobacco. The railroad company did not send it out until the next morning, when the train that carried it was stopped by landslides and washouts that had occurred during the night, and compelled to return to Chattanooga, where a disastrous flood damaged the tobacco. But the supreme court held that the delay was too remote a cause of the damage to be actionable; that the flood was a new, intervening cause, that could not have been foreseen,—and declared that even if the agent of the railroad company had absolutely agreed to forward the tobacco the night before the flood, and if it would have entirely escaped injury if it had been so forwarded, the delay in performing the contract would not have been more than the remote cause of the loss.

In the same way, in the case at bar, the acts of the plaintiff in failing to return to the caboose at the end of the five minutes he was told the train would remain at Spooner, in climbing upon the cars, and walking back on their tops to the rear of the last stock car, so that he arrived there at the very instant when the caboose was to be changed, were independent, intervening causes, that prevented the natural and probable consequences of the conductor's assurances, and the movement of the train, and brought about an unnatural and improbable result, that no human foresight could have anticipated,—an accident that resulted from a strange combination of fortuitous circumstances, few of which seem to have been more remote, or less likely to have produced the surprising consequence, than the conversations and acts of the conductor.

The view we have taken of this assignment of error makes it unnecessary to consider others. The judgment below is reversed, with costs, and the cause remanded, with directions to grant a new trial.