## THE PAUNPECK.

### THE ANDREW J. WHITE.

#### HOBOKEN FERRY CO. et al. v. HALL.

#### HEIPERSHAUSEN v. SAME.

(Circuit Court of Appeals, Second Circuit. March 10, 1898.)

Nos. 79 and 80.

1. COLLISION—PRECAUTIONS AGAINST—FERRYBOATS AND TUGS.

While ferryboats crossing the Hudson from New York are privileged to entrance to and exit from their slips without embarrassment from the presence of other vessels, it is not for that reason negligence for a steam tug with a tow 150 feet astern to pass up the river opposite such slips 800 feet from shore, though another tug and tow are also coming up on a parallel course 350 feet outside of it.

2. SAME—VESSELS CROSSING—NEGLIGENCE CAUSING COLLISION.

A tug with a tow 150 feet astern, passing up the Hudson, obeyed the signal of a ferryboat, and allowed it to cross ahead. After the tug had crossed under the stern of the ferryboat, the latter, fearing collision with another vessel, stopped and backed, coming in collision with the tow. *Held* that, even if negligent in being too near the shore, the tug was not liable for the injury, which was not the proximate result of such negligence, but of the intervening negligence of one or both of the other vessels.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by John W. Hall, owner of the schooner Ettie H. Lister, against the steam ferryboat Paunpeck, for damages for injuries in a collision. A cross libel was filed by the Hoboken Ferry Company, owners of the Paunpeck, against Hall and the steamtug Andrew J. White. Appeal from decrees holding both vessels in fault. Reversed, with instructions.

Albert A. Wray, for appellant the White.

James J. Macklin, for appellant Hoboken Ferry Co.

George B. Adams, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal from two decrees of the United States district court for the Southern district of New York holding the steam ferryboat Paunpeck and the steamtug Andrew J. White mutually in fault for the damages caused by a collision between the Paunpeck and the schooner Ettie H. Lister, in tow of the White.

On April 24, 1894, the ferryboat Paunpeck left her slip at the foot of Christopher street, New York, at 5:46 p. m., bound for the foot of Newark street, Hoboken, across the river from, and a little to the southward of, Christopher street. There was an ebb tide running 2½ miles an hour. When she had gotten within about 100 feet of the mouth of her slip, she was slowed and stopped to allow a tug with a tow to cross the mouth of the slip ahead of her. After the tug and tow passed, the Paunpeck blew a long whistle, and went ahead under one bell. As she emerged from the slip, three tugs with tows were coming up the river,—the steamtug E. L. Austin, towing three scows tandem, about 200 feet off the pier line; the

steamtug Andrew J. White, with the Ettie H. Lister in tow astern on a hawser of about 150 feet, about 800 feet off shore, and about 1.100 feet below Christopher street; and the New York Central lighterage tug No. 17, with a car float in tow alongside on her port side, about 350 feet outside of the tug White, and about abreast of the wheel of the Lister. The White was making about four knots against the tide, and the New York Central tug was overhauling her. The Paunpeck, as she came out, blew a signal of one whistle, which was answered by each of the tugs with a like signal. The White, on answering the whistle of the ferryboat, immediately slowed. The Paunpeck continued on her course, passing in front of the White, about 150 feet away, and the White passed under her stern. After the White had gone under the stern of the ferryboat, the latter began backing, and an alarm signal was given on the White. But the Paunpeck continued to back, and, drifting down on the ebb tide, came into collision with the schooner. The collision took place about 200 feet below the ferry slip. The pilot of the Paunpeck checked her speed, blew an alarm whistle, and backed. while the New York Central tug was still 200 feet to the westward of him, and on his port bow. In his report to the supervising inspector he stated that as his vessel emerged from the ferry slip he blew a signal of one whistle to pass ahead of all the tugs, and that it was answered by each of them, but that the New York Central tug failed to comply, and, after he had passed ahead of the White, he was compelled to stop and back, to avoid collision with the New York Central tug. In fact, the New York Central tug had complied, and, if the Paunpeck had kept on, she would have passed safely in front of the New York Central tug.

The district judge found the ferryboat in fault because she unnecessarily backed when the New York Central tug would have avoided her if she had kept on, and also because it was imprudent for her to start on an ebb tide in front of the three lines of boats; and he condemned the White for fault "in running so near the slips with such a tow, and in line with another tow parallel and only a little outside of it."

It is no doubt obligatory upon vessels navigating the Hudson river opposite New York City to conform their movements, so far as is reasonably practicable, to the convenience of ferryboats in entering and leaving their slips. Because of the necessity that these transits be made with great frequency and regularity for the accommodation of the public, ferryboats are privileged to entrance and exit without embarrassment from the presence of other vessels in unnecessary proximity to the slips. Accordingly it is adjudged to be the duty of such vessels plying up and down the river "to keep a sufficient distance from the slips, and hold themselves under such control as to enable them to avoid ferryboats leaving their slips upon their usual schedule time." The Breakwater, 155 U. S. 252, 15 Sup. Ct. 99.

It would seem to be a somewhat violent application of the rule to hold the White in fault. She was proceeding sufficiently far off shore to allow the ferryboat ample room for any maneuver the latter might see fit to attempt in leaving her slip. There was no

reason why she should anticipate any hazard because the New York Central tug, with her tow, came up the river and overtook her on an outside and parallel course. If that tug had governed her movements properly, her presence would not have embarrassed the maneuver of the ferryboat. Any hazard from the proximity of that tug and tow was purely a speculative one.

If it should be assumed, however, that the White was in fault, the case is one where her fault was remote, and not contributory to the collision as a proximate cause. She had allowed the ferryboat the right of way, and the latter had availed herself of the privilege with safety. There would have been no danger in the situation except for the subsequent intervening negligence of others. Even if this intervening negligence was the misconduct of the New York Central tug in failing to slow as promptly as she should have done to permit the ferryboat to pass in front of her, the White was not responsible for her misconduct. But the intervening negligence was the misconduct of the ferryboat, and there would have been no collision if she had been properly navigated. It was caused by her fault in stopping and backing when she ought to have kept on in front of the New York Central tug. Her pilot was not justified in assuming that the New York Central tug would not perform her duty while there was yet time for her to do so, and in doing so he took the risk of being wrong in his assumption. The principle is applicable that no liability attaches to an act of negligence for a result which could not have been foreseen, or reasonably anticipated as the probable consequence, and would not have been induced but for the interposition of a new and independent cause. The Clara, 5 C. C. A. 390, 55 Fed. 1021; Railway Co. v. Elliott, 5 C. C. A. 347, 55 Fed. 949; Railroad Co. v. Bennett, 16 C. C. A. 300, 69 Fed. 525; Motey v. Granite Co., 20 C. C. A. 366, 74 Fed. 155; Scheffer v. Railroad Co., 105 U. S. 252.

The decrees are reversed, with costs, and with instructions to dismiss the petition of the Hoboken Ferry Company, and decree conformable with this opinion.