COLE v. GERMAN SAVINGS & LOAN SOC.

(Circuit Court of Appeals, Eighth Circuit. July 23, 1903.)

No. 1,893.

1. NEGLIGENCE—PROXIMATE CAUSE—TEST.

An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury.

2. SAME—REMOTE CAUSE—TEST.

But an injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause, or no cause whatever, of the injury.

3. SAME—INTERVENING CAUSE—TEST.

An injury that results from an act of negligence, but that could not have been foreseen or reasonably anticipated as its probable consequence, and that probably would not have resulted from it, had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable, and such an act of negligence is the remote cause, and the independent intervening cause is the proximate cause, of the injury.

4. SAME—CONCURRING NEGLIGENCE—EFFECT.

It is no defense to an action for damages for an injury of which the act or omission of the defendant was the proximate cause that the negligent or wrongful act of another concurred with the recklessness of the defendant to produce the untoward result.

5. SAME.

But the concurring negligence of another cannot transform the remote into the proximate cause of an injury, or create or increase the liability of the defendant. It cannot make an injury which was not the natural and probable result of the negligent acts or omissions of the defendant their natural and probable consequence. No act contributes to an injury, in the legal acceptation of that term, unless it is a proximate cause of that injury, and no one is liable for an injury unless it was the natural and probable result of his act.

6. SAME—EVIDENCE.

The plaintiff entered and passed along a hall in the building of the defendant to take the elevator, the well or shaft of which opened into the hall. A boy, who was a stranger to her and to the defendant, hurried past her in the hall, pushed the sliding door of the well of the elevator, which was open from one to ten inches, back as far as it would go, and stepped back. The plaintiff supposed this boy was the operator of the elevator, and stepped in. The elevator was at an upper floor in charge of its regular operator, and plaintiff fell to the bottom of the well and was injured. The hall was so dark that it was difficult, but not impossible, to see the elevator when it was at the lower floor, and when it was not there nothing but darkness was visible in the well. The strange boy had been seen by witnesses riding and visiting on the elevator a dozen times and endeavoring to operate it once. The door of the shaft or well could be opened from the outside, when it was latched, by lifting and sliding it. It would bound open from one to ten inches when the operator jammed it, and it was often left open to that extent. *Held*, the negligent acts and omissions of the defendant were not, and those of the strange boy were, the proximate cause of the injury. The latter constituted an independent intervening cause, which interrupted the natural sequence of events between the negligence of the defendant and the injury of the plaintiff, insulated the defendant's negligence from

¶ 4. See Negligence, vol. 37, Cent. Dig. § 75.

the plaintiff's hurt, broke the causal connection between them, and produced her injury.

7. SAME—VIOLATION OF LAW OR DUTY NOT REASONABLY TO BE ANTICIPATED.
   The act of the strange boy could not be foreseen or reasonably anticipated as the probable result of the negligent acts or omissions of the defendant. A violation of law or duty by a third party, when not intended by a defendant, is not regarded by the law as the natural consequence of his acts of negligence, and cannot be reasonably anticipated as their probable result.

8. TRIAL—PRACTICE—EXISTENCE OF SUBSTANTIAL EVIDENCE ALWAYS QUESTION FOR COURT.
   There is always a preliminary question for the judge at the close of the evidence in every trial to a jury, and that is, not whether or not there is any evidence, but whether or not there is any substantial evidence, upon which a jury can properly render a verdict for the party who relies upon it.

9. SAME—PROXIMATE CAUSE—EXISTENCE OF EVIDENCE—DIRECTING VERDICT.
   The question, what is the proximate cause of an injury? is ordinarily a question for the jury. But the burden is always on the plaintiff, in an action for personal injury, to show that the negligence charged was the proximate cause of the injury; and where, at the close of the trial, there is no substantial evidence upon which the jury can properly find that the defendant's negligence was the proximate cause of the injury, it is the duty of the court, as it is in a like condition of the evidence in the trial of other issues of fact, to peremptorily instruct the jury to return a verdict for the defendant.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Utah.

The plaintiff, Viola Cole, sued the German Savings & Loan Society for damages which she alleged were the result of its negligence in the care and operation of its elevator, and at the close of the trial these facts were established: About 4 o'clock in the afternoon of a bright sunshiny day in May, the plaintiff, a lady 32 years of age, entered the hall of a building of the German Savings & Loan Society for the purpose of riding on an elevator to an upper story. The well of this elevator was about 40 feet distant from the entrance to the hall, into which it opened. It was separated from the hall by a door, which at the time was standing open not more than 10 inches. As the plaintiff passed through this hall, a boy who was a stranger to her, and who was not employed by or authorized to act for the defendant, but who had been seen by one of the witnesses prior to that time endeavoring to operate the elevator once, and riding upon it and visiting the boy in charge of it a dozen times, hurriedly passed the plaintiff, seized the sliding door to the elevator shaft, pushed it back as far as it would go, and stepped back. The elevator was at an upper story in charge of its regular operator. The plaintiff supposed that the strange boy was the operator of the elevator, stepped into the shaft, and fell 10½ feet to its bottom, and was seriously injured. The hall was dark and gloomy. It was difficult to see the elevator at the lower floor, but it was not impossible to see it. When it was not at that floor, nothing but darkness was visible in the well below it. There was no artificial light in the hall at the time of the accident, although there were the means to make an electric light, which was often lighted, just in front of the door of the shaft. This door was furnished with a hook, which, when the door was closed, entered a slot and grasped a bar. But the door could be opened from the outside, even when it was latched, by lifting it and pushing it back. When the employé in charge of the elevator jammed the door, it would bound back and slide open from 1 to 10 inches. The court instructed the jury, upon this state of facts, to return a verdict for the defendant, and this charge, together with certain rulings rejecting proffered testimony, is assigned as error.

Herbert R. Macmillan (Hiram H. Henderson, on the brief), for plaintiff in error.

Frederick V. Brown (W. A. Kerr and Edward F. Waite, on the brief), for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The crucial question in this case is whether or not the negligence of the defendant was the proximate cause of the injury of the plaintiff, so that, in the legal acceptation of that term, it contributed to her hurt. "Causo proxima, non remota, spectatur," and those damages which are the result of remote causes form a part of that large mass of resulting losses styled "damnum absque injuria," for which the law permits no recovery. A clear conception of the test which distinguishes the proximate from the remote cause is, therefore, the first and the indispensable prerequisite to a true answer to the question which this case presents; for by that test alone must the issue here, in all the varying garbs in which the ingenuity of counsel has clothed it, be tried and be ultimately determined. This test is most clearly seen from the standpoint of the injury inflicted, and is well disclosed by these indisputable principles of the law:

An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause, or no cause whatever, of the injury. An injury that results from an act of negligence, but that could not have been foreseen or reasonably anticipated as its probable consequence, and that would not have resulted from it, had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable. Such an act of negligence is the remote, and the independent intervening cause is the proximate, cause of the injury. A natural consequence of an act is the consequence which ordinarily follows it—the result which may be reasonably anticipated from it. A probable consequence is one that is more likely to follow its supposed cause than it is to fail to follow it. Chicago, St. P., M. & O. Ry. Co. v. Elliott, 55 Fed. 949, 952, 5 C. C. A. 347, 350, 20 L. R. A. 582; Railway Co. v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256; Hoag v. Railroad Co., 85 Pa. 293, 298, 299, 27 Am. Rep. 653.

Let us try the issue in hand by these familiar rules. It goes without saying that the injury of the plaintiff was the natural and probable consequence of the act of the trespasser who preceded the plaintiff to the elevator, opened the door of the well, and stepped back, thus inviting her to pass into the shaft. No one can contemplate this act for a moment without a clear conviction that the fall and the injury were its natural and probable result. This act was, therefore, a proximate cause of the injury—an act of negligence which formed the basis for an action for damages against the strange boy who committed it. It was

not only the nearest cause of the disaster in point of time, but it was the moving and efficient cause—the cause without which, so far as finite vision can see, the accident would never have occurred.

Counsel for the plaintiff do not deny this obvious conclusion, but they insist that the negligence of the strange boy merely concurred with the acts of omission and commission of the defendant; and they invoke the conceded rule that it is no defense to the damages resulting from an act of negligence that the carelessness of another concurred with the negligence of the defendant to produce the injury. Among other authorities they cite the case of Union Pac. R. Co. v. Callaghan, 56 Fed. 988, 993, 994, 6 C. C. A. 205, 210, in support of this position. In that case the negligence of a conductor of a train of cars who recklessly directed his engineer to disregard a signal to stop, which was given at a station they were passing, concurred with the succeeding failure of the engineer to observe and heed other signals of danger, and led him to drive the train upon a defective bridge, and this court held that the concurring negligence of the engineer was dependent upon the prior reckless order of the conductor; that the engineer's negligence was a dependent, and not an independent, cause of the disaster, that it did not break and turn aside the natural sequence of events between the recklessness of the conductor and the accident, but simply permitted that act to work out its natural and probable result; and that for this reason it constituted no defense to the action for damages for the negligence of the conductor. In the opinion this court said:

"The independent intervening cause that will prevent a recovery on account of the act or omission of a wrongdoer must be a cause which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result, that could not have been reasonably anticipated." 56 Fed. 993, 994, 6 C. C. A. 210.

But it also said:

"No act contributes to an injury, in the legal acceptation of that term, unless it is a proximate cause of that injury—unless it is near to it in the order of causation. Jacobus v. Railway Co., 20 Minn. 125, 134 [(Gil. 110), 18 Am. Rep. 360]." 56 Fed. 990, 6 C. C. A. 207.

The test of the liability, therefore, in cases of concurring negligence is the same that it is in all other actions for negligence. It is the true answer to the questions: Was the injury the natural and probable consequence of the act on which the action is based? Was it reasonably to be anticipated from that act? If it was, the action may be maintained, although the negligence of another concurred to produce the untoward result. If it was not, the act of negligence will not sustain an action, whether the act of another concurred or failed to concur to produce it. A negligent act from which an injury could not have been foreseen or reasonably anticipated is too remote in the line of causation to sustain an action for an injury in every case, and the concurring negligence of another cannot make it less remote, nor charge him who committed it with responsibility for it to which he would not have been liable to answer in the absence of the negligence of the third party.

It is not here asserted that there may not be many cases in which one who has committed a negligent act may be liable for an injury which is the result of his wrongful act and of the concurring negligence of another, but which would not have followed in the absence of the recklessness of the third party. The succeeding or concurring negligence of another and its evil consequences may be the natural and probable result of a defendant's act of negligence, so that the latter may be actionable. But, unless the ultimate injury is the natural and probable consequence of the defendant's act of negligence, that act is not the proximate cause of the injury, and no action can be maintained upon it, whether the succeeding injury results from that act alone or from that act and the concurring or succeeding negligence of a stranger. In other words, the concurring negligence of another cannot transform an act of negligence which is so remote a cause of an injury that it is not actionable into a cause so proximate that an action can be maintained upon it. It cannot create a liability against one who does not legally cause it, or make an injury the natural and probable result of a prior act of negligence which was not, or would not have been, such a result in its absence. No act contributes to an injury, in the legal acceptation of that term, unless it is a proximate cause of that injury—unless that injury could and ought to have been foreseen or reasonably anticipated as its probable consequence. The conclusion inevitably follows that the concurring negligence of the trespasser in this case does not answer the primary question which the action presents. It leaves it entirely undetermined, and that question still recurs. Was the injury of the plaintiff the natural and probable result of the acts or omissions of the defendant? Let us see.

That negligence consisted of permitting such a degree of darkness in the hall opposite the door which opened into the well of the elevator that it was difficult to see whether or not the elevator was there; of allowing boys to visit in, ride upon, and sometimes to operate the elevator; of allowing the boy who opened the door to the well to ride and visit in the elevator about a dozen times, and to endeavor to operate it at least once; of neglecting to provide a lock for the door which would prevent any one from opening it from the outside; and of permitting the door to stand open from one to ten inches. The burden of proof was upon the plaintiff to establish a state of facts which would naturally lead to the conclusion that her entrance and fall in the well were the natural and probable consequences of these acts of negligence committed by the defendant. If she failed to successfully bear this burden, she was entitled to no damages from the Savings & Loan Society. Chicago, St. P., M. & O. Ry. Co. v. Elliott, 55 Fed. 949, 5 C. C. A. 347, 20 L. R. A. 582; Union Pac. Ry. Co. v. Callaghan, 56 Fed. 988, 993, 6 C. C. A. 205, 210. Where is the evidence to sustain such a conclusion? The best evidence upon such an issue is the testimony of experience, because what has been is our best guide to what will be. The challenged acts and omissions of the defendant had been in operation for many months. If they had produced such a consequence as the fall and injury of the plaintiff in the past, that fact would have raised a strong presumption that this was their natural

tendency. If they had produced no such result, the counter presumption was not less strong. It is for this reason that courts frequently speak of the fact that no such injuries as those upon which the actions under their consideration are based have occurred before as persuasive evidence that the disasters could not have been foreseen or reasonably anticipated as the probable result of the acts upon which the suits are based. Cleveland v. New Jersey Steamboat Co., 68 N. Y. 306, 312. There is no evidence in this case that any such accident or injury as that from which the plaintiff suffers ever followed the defendant's acts of negligence before the plaintiff fell into the well. Not only this, but there is no evidence that the accident and injury to the plaintiff resulted from these acts or omissions, but positive and convincing testimony that they were produced by the wrongful act of another.

Another class of evidence sometimes presented in cases of this nature consists of the testimony of witnesses that the negligence of the defendant which forms the basis of the action has at times placed them in imminent danger of like accidents, from which they have hardly escaped without injury. But this record is barren of evidence of this character. Experts sometimes come to say that a piece of machinery was so defective, or the method of its operation of so dangerous a character, that in their opinion the condition or the method of operation naturally tended to an accident or injury of the nature of that upon which the action on trial is based. But no expert gave such testimony in the case at bar. The record is barren of all testimony upon the subject, except proof of the acts and omissions of the defendant which have been recited, and of the fact that a proximate cause of the accident was the act of the trespasser who opened the door and extended to the plaintiff the invitation to step into the darkness and to fall, which she accepted. There is nothing in the evidence to the effect that the defendant's acts or omissions ever had produced, or ever would in the natural sequence of events have produced, any such injury as that from which the plaintiff is suffering, while the proof is plenary that it was the act of the stranger which actually caused it.

But counsel seek to escape from the natural effect of this evidence by the contention that the voluntary act of the strange boy in opening the door of the well when the elevator was at an upper floor could and should have been foreseen and anticipated as the probable result of the unlocked door, of the visits of the boy upon the elevator, and of his previous attempt to operate it. This argument loses sight of the fact that the wrongful act of this trespasser was not committed in operating, or in attempting to operate, the elevator, in riding or visiting upon it, or in the doing of any act which he had ever done before. He had never opened the door into the empty well and invited a patron of the elevator to step into it before this accident occurred. How could any one reasonably anticipate that he would be guilty of such an act? The facts that he had visited upon the elevator and had attempted to operate it with the permission of the employé in charge of it gave no warning of

any such purpose on his part or of the probability of any such act. Mr. Justice Holmes in delivering the opinion of the Supreme Court of Massachusetts in Burt v. Advertiser Newspaper Co., 154 Mass. 238, 247, 28 N. E. 1, 6, 13 L. R. A. 47, said:

"Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual."

The act of the strange boy was a violation of the law. It was a trespass upon the property and upon the rights of the defendant. The defendant could not foresee or reasonably anticipate, and it was not required to anticipate or to provide for, violations of the law and trespasses upon its property by its fellow citizens. The legal presumption was that this boy and all boys and men would obey the law, would refrain from committing trespasses upon the defendant's rights or property, and would discharge their moral and social duties. The defendant had the right to indulge in this presumption, and to calculate the natural and probable result of its acts and omissions upon this supposition. Indeed, it could reckon upon no other; for it is alike impracticable and impossible to predicate and administer the rights and remedies of men upon the theory that their associates and fellows will either violate the laws or disregard their duties. Little Rock & M. R. Co. v. Barry, 84 Fed. 944, 950, 28 C. C. A. 644, 650, 43 L. R. A. 349. The mischievous act of the strange boy which caused the plaintiff's hurt could not have been foreseen nor reasonably anticipated as the probable result of the defendant's acts of negligence, because it was a violation of law and of duty, and because there was nothing in previous experience, observation, or information to lead to such an anticipation. This concludes the discussion of the facts relative to the relations and situation of the parties as disclosed by the record, in view of the arguments of the counsel for the plaintiff.

It is now no longer difficult to determine whether or not the acts of the defendant were the proximate cause of the injury to the plaintiff. Wharton says:

"Supposing that, had it not been for the intervention of a responsible third party, the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that causal connection between negligence and damage is broken by the interposition of responsible human action. I am negligent on a particular subject-matter as to which I am not contractually bound. Another person, moving independently, comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person. If so, the person so intervening acts as a nonconductor, and insulates my negligence, so that I cannot be sued for the mischief which the person so intervening directly produces. He is the one who is liable to the person injured." Whart. Neg. § 134.

Bishop on Noncontract Law, § 42, says:

"If, after the cause in question has been in operation, some independent force comes in and produces an injury, not its natural or probable effect, the author of the cause is not responsible."

Judge Cooley and the Supreme Court of North Carolina say in his words:

"If the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote." Clark v. Wilmington, etc., R. Co., 109 N. C. 430, 449, 14 S. E. 43, 47, 14 L. R. A. 749.

The Supreme Court declares:

"The question always is, was there an unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury?" Railway Company v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256.

And again:

"The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental, or instruments of a superior or controlling agency, are not the proximate causes and the responsible ones." Insurance Company v. Boon, 95 U. S. 117, 130, 24 L. Ed. 395.

The Circuit Court of Appeals for the Seventh Circuit holds that:

"The remote cause is that cause which some independent force merely took advantage of to accomplish something not the probable or natural effect thereof. * * * The causal connection between the negligence and the hurt is interrupted by the interposition of an independent human agency; and, as Mr. Wharton expresses the thought, 'the intervener acts as a nonconductor, and insulates the negligence.' The test is: Was the intervening efficient cause a new and independent force, acting in and of itself in causing the injury and superseding the original wrong complained of, so as to make it remote in the chain of causation, although it may have remotely contributed to the injury as an occasion or condition?" Goodlander Mill Co. v. Standard Oil Co., 63 Fed. 400, 405, 11 C. C. A. 253, 258, 459, 27 L. R. A. 583.

And this court has said:

"An injury that could not have been foreseen or reasonably anticipated as the probable result of the negligence is not actionable, nor is an injury that is not the natural consequence of the negligence complained of, and that would not have resulted from it, but for the interposition of some new independent cause that could not have been anticipated." Chicago, St. P., M. & O. Ry. Co. v. Elliott, 55 Fed. 949, 951, 952, 5 C. C. A. 347, 349.

Try this case by any of these tests, and the result is the same. The independent voluntary act of the strange boy who opened the door of the elevator and invited the plaintiff to enter the well was incapable of anticipation. No one could have foreseen it as the probable consequence of the acts or omissions of the defendant. It broke the chain of causation between the prior negligence of the defendant and the injury of the plaintiff, insulated the defendant's acts and omissions from the plaintiff's hurt, and imposed upon the boy who willed and committed the act which produced the injury the sole liability for the damages which resulted from it. The acts and omissions of the defendant were too remote to legally contribute to the injury or to impose liability for it. They were not a proximate cause of the accident, and the mischievous and wrongful act of the strange boy was the sole moving efficient proximate cause that pro-

duced it. Railroad Co. v. Barry, 84 Fed. 944, 950, 28 C. C. A. 644, 650, 43 L. R. A. 349; Railroad Co. v. Elliott, 55 Fed. 949, 952, 5 C. C. A. 347, 350; Finalyson v. Milling Co., 67 Fed. 507, 512, 14 C. C. A. 492, 496; Railway Co. v. Bennett, 69 Fed. 525, 16 C. C. A. 300; Railway Co. v. Callaghan, 56 Fed. 988, 993, 6 C. C. A. 205, 210; Railway Co. v. Moseley, 57 Fed. 921, 926, 6 C. C. A. 641, 646; Insurance Co. v. Melick, 65 Fed. 178, 184, 12 C. C. A. 544, 550, 27 L. R. A. 629; Goodlander Mill Co. v. Standard Oil Co., 63 Fed. 400, 11 C. C. A. 253; Laidlaw v. Sage, 158 N. Y. 73, 98–102, 52 N. E. 679, 44 L. R. A. 216; Trewatha v. Milling Co., 96 Cal. 494, 500, 28 Pac. 571, 31 Pac. 561; Ayers v. Rochester Ry. Co., 156 N. Y. 104, 108, 50 N. E. 960; Doherty v. Waltham, 4 Gray, 596; Parker v. Cohoes, 10 Hun, 531.

Our conclusion has not been reached without a careful perusal of the opinions of the courts in the cases cited by counsel for the plaintiff in error, especially those in Colorado Mortgage & Investment Co. v. Rees (Colo. Sup.) 42 Pac. 42; Tousey v. Roberts, 114 N. Y. 312, 21 N. E. 399, 11 Am. St. Rep. 655; and Lane v. Atlantic Works, 111 Mass. 136. These opinions have been read with the deference and consideration to which the judgments of learned and conscientious jurists are always entitled, but they are not controlling authority in a federal court; and the views which have already been expressed in this opinion, the reasons which have been given for them, and the authorities which have been cited in support of them commend themselves more forcibly and persuasively to our minds than the opinions and reasoning in the cases upon which the counsel for the plaintiff rely. Jurisdiction over controversies between citizens of different states was conferred upon the national courts for the avowed purpose of securing to the litigants in such cases the benefit of the independent opinions of the judges of those courts. It is the right of these litigants to the independent and conscientious judgment of the judges of the national courts to whom they present their controversies upon the merits of the issues they raise, and a complete and careful discharge of the duties imposed upon them requires of the members of the federal judiciary that they shall carefully form and express their independent judgments upon the questions presented by such controversies. In the case at bar this duty has been discharged, not without some study, deliberation, and care, and the conclusion of this court is that the record before it conclusively shows that the act of the strange boy who opened the door of the well of the elevator was the sole proximate cause of the plaintiff's injury.

Counsel earnestly invoke the rule announced in Railway Co. v. Kellogg, 94 U. S. 469, 474, 476, 24 L. Ed. 256, which was followed by this court in Railway Co. v. Callaghan, 6 C. C. A. 205, 208, 56 Fed. 988, 991, and Insurance Co. v. Melick, 65 Fed. 178, 180, 12 C. C. A. 544, 546, 27 L. R. A. 629, that the question, what is the proximate cause of an injury? is ordinarily a question for the jury, and they strenuously maintain that the Circuit Court erred because it refused to submit the question which has been considered to the jury upon the trial below. There is, however, always a preliminary question for the

judge at the close of the evidence before a case can be submitted to the jury, and that question is, not whether or not there is any evidence, but whether or not there is any substantial evidence upon which a jury can properly render a verdict in favor of the party who produced it. Brady v. Chicago & G. W. Ry. Co., 114 Fed. 100, 105, 52 C. C. A. 48, 52, 53, 57 L. R. A. 712; Railway Co. v. Belliwith, 83 Fed. 437, 441, 28 C. C. A. 358, 362; Association v. Wilson, 100 Fed. 368, 370, 40 C. C. A. 411, 413; Commissioners v. Clark, 94 U. S. 278, 284, 24 L. Ed. 59; North Pennsylvania R. Co. v. Commercial Nat. Bank, 123 U. S. 727, 733, 8 Sup. Ct. 266, 31 L. Ed. 287; Railway Co. v Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213; Laclede Fire Brick Mfg. Co. v. Hartford Steam Boiler Inspection & Ins. Co., 60 Fed. 351, 354, 9 C. C. A. 1, 4; Gowen v. Harley, 56 Fed. 973, 6 C. C. A. 190; Motey v. Granite Co., 74 Fed. 155, 157, 20 C. C. A. 366, 368.

The burden of proof is upon the plaintiff in an action for personal injury to establish the fact that the acts of negligence of which he complains were the proximate cause of the injury suffered, and if, at the close of the testimony in a trial for personal injury, there is no substantial evidence upon which a jury can properly find that the negligence charged was the proximate cause of the hurt sustained, it is the duty of the court, as it is in a like condition of the evidence in the trial of every other issue of fact, to instruct the jury to return a verdict for the defendant. Railroad Co. v. Elliott, 55 Fed. 949, 954, 5 C. C. A. 347, 352; Railroad Co. v. Reeves, 10 Wall. 176, 19 L. Ed. 909; Scheffer v. Railroad Co., 105 U. S. 249, 252, 26 L. Ed. 1070; Jenks v. Inhabitants of Wilbraham, 11 Gray, 142; Durham v. Musselman, 2 Blackf. 96, 18 Am. Dec. 133; Morrison v. Davis, 20 Pa. 171, 57 Am. Dec. 695; Denny v. Railroad Co., 13 Gray, 481, 74 Am. Dec. 645; Dubuque Wood & Coal Ass'n v. County of Dubuque, 30 Iowa, 176; Hoag v. Railroad Co., 85 Pa. 293, 298, 299, 27 Am. Rep. 653; West Mahanoy Tp. v. Watson, 112 Pa. 574, 3 Atl. 866; Read v. Nichols, 118 N. Y. 224, 23 N. E. 468, 7 L. R. A. 130; Railway Co. v. Mutch (Ala.) 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179. This opinion has lamentably failed to accomplish its chief end if it has not clearly shown that this was the condition of the evidence in the case in hand at the close of the trial. The Circuit Court, therefore, committed no error when it refused to submit to the jury a question which, under the evidence before it, could not be lawfully answered in favor of the plaintiff.

We turn to the rulings upon the admission and rejection of evidence which are specified as error. A witness had testified that he frequently used the elevator, and that the name of the boy who was operating it for the defendant at the time of the accident was Jackson. He was then asked this question:

"Now, can you tell the jury what his habits were in running the elevator? Confine yourself to this door and elevator at the ground floor."

The defendant objected to this question "as immaterial and not connected with this transaction," and counsel for the plaintiff stated that they proposed to connect it with the transaction by showing that the habit of the boy was to leave the elevator standing at the ground floor

upon a block of wood, to go to the front of the building, to stand there, to follow or precede patrons into the elevator, to take them up therein and to leave the door of the shaft unlatched and open, so that any one could by touching it open it wide. The court sustained the objection, and complaint is made of this ruling. But the boy who operated the elevator did not open the door or invite the plaintiff to her injury. He did not leave the elevator supported by a block, go to the front of the building, leave the door open while he was there, precede the plaintiff into the elevator, or do any other act at the time she was injured to lead her into her trouble. If he had been in the habit of performing the acts which counsel for plaintiff offered to prove, her injury was not caused by any of them. Those acts were committed and those habits operated at other times, and not at the time of the accident. They had no perceptible connection or relation to the mischievous act of the strange boy, who produced the disaster, and there was no error in excluding the proof of them from the evidence in this case.

For the same reason the court properly refused to permit the same witness to answer this question:

"Have you gone into the elevator from the ground floor and from this hall when the light in the elevator was not burning?"

It was not material, so far as this record discloses, whether this witness went into or stayed out of the elevator when the light was not burning. Neither he nor the elevator nor the light nor the darkness in the elevator had any perceptible relation, causally or otherwise, to the accident and the injury in suit, and no sound reason occurs to us for the introduction in evidence of the answer to this question.

Another witness was asked whether or not he could state to the jury whether the door was kept open or closed about the time of the accident. He answered, "No." An objection was then made to this question, which was sustained, and this ruling is challenged. But, if the ruling was erroneous, it did not constitute reversible error, because it conclusively appears that it did not prejudice and could not have prejudiced the cause of the plaintiff, and error without prejudice is no ground for reversal. The witness answered that he could not tell whether the door was kept open or closed. The ruling which sustained the subsequent objection to this question merely withdrew this answer from the jury. The record shows what the answer would have been. The plaintiff did not offer to prove that the witness could or would tell whether the door was open or closed, and the presumption is conclusive that, if the objection had been overruled, his only testimony would have been that he did not know and could not state whether the door was closed or open. It is obvious that this evidence could have been of no advantage to the plaintiff, and hence its rejection was not fatal to the judgment. There was no reversible error in the trial of this case and the judgment below must be affirmed.

It is so ordered.