# STEVEN *v.* SAUNDERS.[*]

---

PLEADING; AMENDMENT; STATUTE OF LIMITATIONS; TRIAL; DIRECTION OF VERDICT; MASTER AND SERVANT; NEGLIGENCE; INSTRUCTION TO JURY; JUDGMENTS, CORRECTION OF.

1. A count added by way of amendment to a declaration in an action for personal injuries does not state a new and independent cause of

---

[*]*Master and servant.*—In the following editorial notes various questions as to concurrent negligence are discussed and, the authorities presented: Negligence of fellow servant concurring with failure of the master to establish or enforce proper rules or regulations for conduct of business, not to *Schwarzschild & S. Co.* v. *Weeks,* 4 L.R.A.(N.S.) 516; Master's liability for injury to employee caused by defective elevator and negligence of fellow servant, note to *Siegel, C. & Co.* v. *Trcka,* 2 L.R.A.(N.S.) 647; Rule of proximate cause applied to combined negligence of master and servant, note to *Lutz* v. *Atlantic & P. R. Co.* 16 L.R.A. 819; For illustrative cases as to concurrent negligence, note to *Tedford* v. *Los Angeles Electric Co.* 54 L.R.A. 168.

action, where it is based upon the same right of recovery as that stated in the declaration as originally filed, but states the cause of action more explicitly.

2. A plaintiff's right of recovery will not be defeated by a too technical construction of an amended declaration. (Following *District of Columbia* v. *Frazer*, 21 App. D. C. 154 and *Beasley* v. *Baltimore & P. R. Co.* 27 App. D. C. 595, 6 L.R.A. (N.S.) 1048.)

3. An objection that there has been no replication to, or joinder of issue upon, a plea of the statute of limitations to a count added to, a declaration by amendment, is waived by the defendant's proceeding to trial upon that count, submitting prayers upon it, and treating it as though issue had been joined upon it; and such an irregularity is also cured by verdict and judgment.

4. An assignment of error based upon the overruling of a motion, at the close of all of the evidence, to direct a verdict in favor of the defendant, merely goes to the sufficiency of the evidence to support the verdict, and does not raise all questions that might have been raised by the defendant by appropriate motions during the progress of the trial.

5. In an action against a master for the death of his servant, which was tried in the lower court on the theory that the superintendent of the master was a vice principal, and the trial court so charged the jury without objection by the defendant, the defendant is estopped to contend, under an assignment of error that the court erred in overruling a motion to direct a verdict in his favor, that the evidence showed that the superintendent was a fellow servant of the master.

6. Where the trial court grants a special instruction to the jury asked by one of the parties, submitting a question raised on the trial to the jury, such party is estopped to claim on appeal that there was no evidence to warrant its submission.

7. In an action against a master for the death of his servant, the negligence of a fellow servant contributing to the injury will not prevent a recovery if the negligence of the master had a share in producing it (Following *District of Columbia* v. *Dempsey*, 13 App. D. C. 533.)

8. An engineer in the employ of a building contractor, and whose duty it is to operate an engine used in hoisting stones to be set in a building under course of construction, has the right to assume that he will be subjected to no unnecessary dangers and that the requirements of the specifications of the building contract will be followed by his employer, in so far, at least, as such requirements are reasonable and conducive to his safety.

9. Where, in the construction of a building, the building contract required the use of dowels in setting pieces of stone coping, and it was the practice to do so, but on one occasion, by direction of the superintendent of the building, such a stone was set in cement without being doweled, and it was dislodged by the negligence of one of the workmen, and fell, killing the hoisting engineer, who was in the employ of the contractor, it was *held* in an action against the contractor for the death of the engineer, that the result of the failure to dowel the stone could reasonably have been anticipated, and that, the negligence of the master having concurred with that of the fellow servant in causing the death of the intestate, the master was liable.

10. Where an action originally against two joint feasors was discontinued as to one by amendment of the declaration, but the clerk of the lower court erroneously entered a judgment on verdict against both, the judgment was *modified* so as not to include the defendant as to whom the action had been discontinued, and, as modified, *affirmed*.

No. 2042. Submitted December 17, 1909. Decided January 14, 1910.

HEARING on an appeal by the defendants from a judgment of the Supreme Court of the District of Columbia on a verdict, in an action to recover damages for the death of the plaintiff's intestate.                          *Modified and Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal by James Steven and James Steven, Jr., doing business as the Steven & Son Company, from a judgment in the supreme court of the District upon a verdict in favor of appellee, Rosa Belle Saunders, the plaintiff in the trial court, in an action for the death of her husband, brought about, as she contends, by the negligence of the defendant.

The declaration as originally filed contained two counts. The first count need not be noticed. In the second count it is averred that the defendant, James Steven, at the time of the accident and prior thereto, was engaged in erecting the hardstone part of the United States Senate office building in this District, and that Thomas Saunders, deceased, was in his employ as a hoisting engineer. The duty of the defendant to

provide reasonably safe places in which to perform said work
is set forth.   It is further averred that the defendant "failed
to provide a reasonably safe place for said employees to work
in when signaling for, hoisting, landing, and setting said stones
on top of said building, so that while one stone was being
hoisted as aforesaid, and while the decedent was, without
negligence or knowledge of the unsafe condition thus created
on top of said building, in the due performance of his em-
ployment, operating the engine and machinery hoisting the
said stone, another block of stone previously set in place at
the top of said building as part of the railing or balustrade,
was dislodged, under negligent orders and directions from the
said defendant, his agent, or superintendent, and thereby caused
to fall upon and strike other previously set stones of the said
building, precipitating said previously set stones or parts there-
of on to and upon the said Saunders and his said engine, one
piece striking the said Saunders upon his head, without warn-
ing of any kind, while he was thus engaged, without negligence,
in the due course of his employment, causing death to almost
immediately result therefrom."

The third count of the declaration was filed more than one
year after the death of Saunders.   That count states it to have
been the duty of the defendant to use reasonable care, precau-
tion, and diligence in superintending and directing the setting
of stones forming the railing or balustrade around the top of
said building, so that said railing or balustrade would not be
liable to be pulled out or fall and injure the servants of the
defendant; that reasonable care and the contract into which
he had entered required the use of dowels "to wit, pieces of metal
or slate projecting from one piece of stone into the adjoining
or adjacent pieces of stone, holes being in each piece of stone to
fit said dowels;" that the defendant, disregarding his duty in
this respect, authorized and directed the setting of stones form-
ing part of said railing or balustrade without the use of said dow-
els; that thereafter, while an employee of the defendant was
endeavoring to comply with the direction of the superintend-
ent of the defendant to "land" a stone then suspended in the

air, "some of the stones which had been previously improperly and insecurely set in place by direction of the defendant, as part of said railing or balustrade, were dislodged from their set places by reason of their insecure setting, caused by the negligent directions of the defendant, as aforesaid, whereby some of said stones and parts of other previously set stones fell from the top of said building, one of them, in falling, striking the decedent on the head while he was, without negligence, and without knowledge of the unsafe condition thus created on top of said building, on the ground, in the due performance of his duties as hoisting engineer, causing death to almost immediately result therefrom."

As the declaration specifies, the defendant was the contractor for the setting of the stone work on the Senate office building. At the time of the accident forming the basis of this action, the work had progressed to the setting of the balustrade or railing around the top of the building. This balustrade consisted of pilasters or balusters 9 inches wide at the top and presumably as wide or wider at the bottom, set at intervals, with a coping $14\frac{7}{8}$ inches wide and 7 inches thick over the tops of said balusters. There were sections of solid masonry, and it was between these sections that the balusters and coping were placed. Defendant's contract required and the method of doing the work was to place a 2-inch cube or "dowel" of slate at the base of each baluster, so that one half the dowel would be sunk into a hole or recess cut in the base on which the baluster was to rest, and the other half would project up and into the corresponding hole or recess in the base of the baluster. Cement was, of course, used, and when this had set or become hardened the baluster was rigid, and not capable of lateral motion. Defendant's contract also required, and the practice until just prior to this accident indisputably was, in placing the coping on the top of the balusters, to put a dowel in the top of each baluster which would project upwards and into a recess in the coping. One of the purposes of these dowels, as stated by an expert witness produced by the defendant, was "to keep the coping or rail from slipping out." Another ex-

pert witness, also produced by the defendant, stated: "The purpose and use of dowels as applied to the situation of setting the top rail on the balusters is to hold it in position, to keep it from moving, to hold it rigid, so that it would not move off the base." The holes or recesses for these stone dowels were cut at the quarry. The method of setting the coping was to apply a thin, slow-setting cement to the tops of the balusters, place a dowel in the recess in the top of each baluster, and then lower the piece of coping, which would be sent up as wanted, in place. It is apparent that, unless the dowels in the tops of the balusters fitted the holes in the base of the coping, there would be a delay.

A witness named Dotts, working for the defendant as a stone mason's helper, testified that, in the forenoon of the day of the accident, the superintendent of the defendant, James Steven, Jr., complained to one Maddox, the mason whom the witness was helping, of the delay in setting said coping; that the mason, in explanation of the delay, mentioned that the dowels did not fit, whereupon the superintendent said: " 'Set them stones; put them down; put them stones down; cut them (dowels) off; I don't care what you do, you must set these stones' * * * 'Hell with the dowels.' That is what he said, 'Hell with the dowels; ——— it, cut them off. You want to get them stones down.' " After this conversation the mason set two pieces of coping, the end piece, which was the cause of the accident, being 4 feet and 6 inches long and weighing between 300 and 400 pounds. This piece entirely covered three balusters and a half of two others,—that is to say, each end projected over only half of a baluster, thereby forming a joint with the end of the next piece. Had the previous practice been followed; therefore, there would have been five dowels projecting into this piece of coping. The balusters under this piece had been set more than twenty-four hours, hence had assumed considerable rigidity. About 2 o'clock of the same day young Steven went up to where the mason was working, and discovered that a stone set early in the morning did not have the right projection. Whereupon Steven called to the man in charge of the

derrick to send up the sling and derrick.   Not understand-
ing the command, a piece of coping was sent up instead.   Where-
upon, as Dotts testified, Steven directed him to "land" it, which
meant to put the stone inside the building.   Dotts got upon the
wall or coping and walked 5 or 10 feet to the piece of coping
last set before noon, and which has been previously described,
in order, as he says, to get down to the cornice, which was
some five and a half below the coping, and signal the derrick
man.   As he was stepping down, "this stone slided right off the
bed and struck me in my breast and carried me backwards right
off the building."   One baluster went down with the coping.
Witness seized the tag rope, which sufficiently arrested his
fall to save him from death.   When the dislodged stone or
coping struck the cornice it broke, and a portion of it, with
the dislodged baluster, fell to the ground, striking and kill-
ing deceased, who was at his post at the engine.   Dotts, later
in the day, examined the tops of the other balusters upon which
the dislodged coping had rested and found the dowel holes full
of cement.   He testified that he had been doing the signaling
from the top of the railing, and that he had not been cautioned
in respect thereto.   Witness further testified that, until, after
the accident, he supposed that dowels had been used in setting
this piece of coping.   There is also evidence in the record that
the helper, in assisting the mason in laying the coping stones,
had to sit on the coping adjacent to the stone that was being
laid.   Young Steven testified for the defendant that he "was
superintendent, looking after the work in general for my (his)
father."   Witness admitted that he talked with the mason be-
fore noon on the day of the accident, but denied that it was
with reference to the setting of the dowels.   The witness fur-
ther testified, "I didn't say anything to him with reference to
the dowels on that occasion."   He was then asked whether he
told Maddox to "cut the dowels off," and replied: *"I might
have told him to trim them a little bit.   *   *   *   When I had
this conversation with Maddox, the witness Dotts was there.
I did not use the language to Maddox, 'Hell with the dowels,
hell with the dowels. ———— it, cut them off;' nor did I use its

equivalent." Witness further testified that, about ten minutes previous to the accident, he had seen Dotts walking on the coping, and had then instructed him never to walk on there again, because it was not safe. The witness admitted on cross-examination that the balusters under the piece of coping which fell had been set more than a day, and, when asked what caused the one baluster to fall with the coping, replied, "That is a question I cannot answer." Maddox, the mason, denied that Steven had complained of the slowness with which the work was progressing, denied that he complained to Steven about the dowels, and also denied that he received any orders to omit, or that he did in fact omit, the use of dowels in setting the dis-lodged stone. The witness was asked: "Did Mr. Steven say to you that morning, 'To hell with the dowels; ———— it, cut them off,' 'cut them off,' or words to that effect?" and answered, "No; I don't think he did." Maddox was discharged the day after the accident.

At the close of all the testimony the defendant moved the court to instruct the jury that, upon the whole evidence, the verdict should be for the defendant, and, upon the refusal of the court so to do, an exception was noted. Thereupon the court, at the request of the plaintiff, granted the following prayer, and the same was given to the jury:

"If the jury find from the evidence that James Steven, Jr., represented the defendant in the construction of the balustrade referred to in the evidence, that he had the control, superintendence, and supervision of such work; hired, discharged, and paid the laborers employed thereon, directed their movements and work in such construction, and, in the absence of the defendant, represented him in all matters relating to such work, and that said James Steven, Jr., required or directed the stone mason engaged in setting the coping or railing upon said balustrade, to cut off or omit the use of dowels in such construction; that the said mason did cut off or omit the use of said dowels, and that, by reason thereof, the stones so set were made and rendered insecure and liable to fall from their places and

injure persons employed in the construction of said building,
and if the jury find that such act was neglected and that by
reason thereof one of the stones, set in the manner aforesaid as
part of said balustrade, did fall, carrying with it another por-
tion or portions of said balustrade and cornice of said build-
ing, causing the death of the plaintiff's intestate, and that the
defendant's negligence contributed to—that is to say, had a
share in producing—the injury, the plaintiff will be entitled
to recover, even though the jury find from the evidence that the
witness Dotts, in climbing from said balustrade and catching
hold of a part of the railing which fell, as detailed in the evi-
dence, was also guilty of negligence which contributed to the
injury." To the granting of this prayer the defendant noted
a general exception. Thereupon the first and second counts
of the declaration, at the request of the defendant, were with-
drawn from the consideration of the jury, and the following
prayers were proposed by the defendant and granted by the
court:

"Unless the jury shall find from a preponderance of the evi-
dence that the defendant, by his superintendent, directed, au-
thorized, or required the stone-setter Maddox to cut off or omit
the use of dowels in setting the stones in the coping or rail,
and also find that, in consequence of such order or require-
ment, the dowels were omitted from the stone or stones that
fell at the time of the killing of plaintiff's intestate, there shall
be no right of recovery under the third count of the declara-
tion, and the verdict, under that count, should be for the de-
fendant."

"The jury are instructed that the witness Dotts and the plain-
tiff's intestate were fellow servants, and that the negligent act
of one which might have resulted in injury to the other would
not afford the latter a cause of action against the defendant."
The court refused to charge the jury, at the request of the
defendant, that no recovery could be had if they should find that
the stone would not have fallen but for the negligent act of
Dotts. To this ruling an exception was duly noted. Thereupon

the court, without objection or exception on the part of the defendant, charged the jury in part as follows:

"So far as appears from the evidence in the case James Steven, the defendant, was represented in this work by James Steven, Jr., his son, who has testified here as a witness; but his relation to the work and to the defendant in the case was such that it has been treated all the way through as if it were James Steven, Sr., who was there. That is James Steven, Jr., was the superintendent, and stood in the place of his father in all that was done. So there is no embarrassment on that score.

"The declaration as it comes to you consists of one count only, namely, the third count; and that count charges that the negligence consisted in this,—that improper directions were given by James Steven to the mason who was constructing the balustrade, as to how it should be constructed, and that these improper directions resulted in making an unsafe place for the decedent, Saunders, to work in down below by his engine. It made an unsafe condition of affairs, it is claimed, at the top of the building and one which might result naturally in stones coming down upon the head of the engineer, and then it says that that was the result, and that the stone did come down there and killed the engineer.

"So the principal contest here is whether an unsafe condition of things was created there on the edge of the cornice, and, if so, whether it was created by the direction of James Steven; and, if so, whether that was negligence on his part."

"If there was no direction given to leave out the dowels, the plaintiff does not claim that there can be any recovery; and if you fail to find that that direction was given it is admitted that there can be no recovery.

"Now, as bearing on the question of whether these directions were given, and whether the dowels were left out, an argument has been made to you on both sides as to how the thing probably occurred,—how it could have occurred. The weight of the stone you have. You know that, and you know the size of it, and you have a description of the way in which Dotts

got down over the rail. Now, if these dowels were in there, as claimed, and the stone was of that weight, and it was so placed upon the balusters, there comes a question peculiarly for you, as men familiar with the ordinary affairs of life to decide. Could a man of the weight of Dotts, getting down that way, lift up that stone, of the weight it was, placed as it was on those balusters, so as to clear it from those dowels, and pull it over upon himself? Or, is it necessary, in order to account for what happened, to find that it slid along off the top of the balusters because there were no dowels there?" The court further instructed the jury, over the objection and exception of the defendant, as follows:

"Now, I ought to say a word about Dotts' part in this affair. If Mr. Steven by his direction created an unsafe condition there, and did it negligently, as I said before, and by reason of that negligence the stone which struck and killed the decedent was dislodged from its place, if this all happened by reason of the negligence of Steven, and could not have happened except for that negligence, it is no excuse for him, legally, that Dotts may have been negligent in using the rail as he did, to get down on the cornice. Although Dotts' negligence may have contributed to the accident, and although the accident would not have happened except for that negligence of Dotts, still the defendant may be liable, because in the view of the law there would be two negligences operating together in that case; and the fact that Dotts was negligent and contributed to the accident would not relieve Steven of liability, if his negligence also existed and contributed to the accident in the way I have stated."

*Mr. A. A. Birney* and *Mr. Henry F. Woodard* for the appellants.

*Mr. A. L. Newmyer* and *Mr. Leon Tobriner* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

We will first consider the assignment of error directed to the action of the court in allowing recovery under the third or amended count of the declaration, this count, as previously stated, having been filed more than a year after the death of the plaintiff's intestate. If this count constitutes a new cause of action, the court erred in permitting recovery thereunder. If, on the other hand, it is but an elaboration of matters stated in the second count there was no error.

In the second count, as we have seen, it is averred that the defendant failed in its duty to provide a reasonably safe place for its employees to work in when signaling for, hoisting, landing, and setting said coping stones, and the manner of the injury is described as in the third count. In both counts the right of recovery is based upon the failure of the defendant to provide a safe place in which to work. The manner of the injury is similarly set forth in both counts, and while, in the amended count, the cause of action is more explicitly stated, we do not think a new and independent cause of action is there stated. The purpose of the statute is to give the defendant early notice that damages are to be sought from him, and the nature and scope of the claim. Such being the object of the statute, the plaintiff's right of recovery ought not to be defeated by a too technical construction of an amended declaration. *Beasley* v. *Baltimore & P. R. Co.* 27 App. D. C. 595, 6 L.R.A. (N.S.) 1048; *District of Columbia* v. *Frazer,* 21 App. D. C. 154, 158; *Texas & P. R. Co.* v. *Cox,* 145 U. S. 593, 36 L. ed. 829, 12 Sup. Ct. Rep. 905. See also *Rio Grande Dam & Irrig. Co.* v. *United States,* decided Dec. 13th, 1909, in the Supreme Court of the United States, 215 U. S. 260, 54 L. ed. —, 30 Sup. Ct. Rep. 97.

The point is also made that, inasmuch as no notice was taken of the defendant's plea of the statute of limitations to said third count of the declaration, the plea must be taken to be admitted. This purely technical defense was waived by appellant by proceeding to trial on the third count, submitting pray-

ers upon it, and treating it as though at issue. Such conduct
of the defendant justified the plaintiff in believing that for-
mal answer to this plea had been waived. Moreover, the ir-
regularity was cured by verdict and judgment. *Laber* v. *Cooper,*
7 Wall. 565, 19 L. ed. 151.

The refusal of the court to take the case from the jury after
all the evidence had been introduced is next assigned as error.
This assignment merely goes to the sufficiency of the evidence
to support the verdict, and does not raise all questions that
might have been raised by appropriate motions during the prog-
ress of the trial. It is now urged as one ground for this motion,
that James Steven, Jr., was a fellow servant of the decedent,
and that, therefore, no right of action accrued to the plaintiff.
As previously stated, Young Steven testified that he was super-
intendent, in charge for his father. The evidence also showed
that he hired and discharged the help and directed and super-
intended the work. Indeed, the trial proceeded upon the theory
that he "was superintendent and stood in the place of his
father in all that was done." The court, as previously stated,
so charged the jury without objection from the defendant. By
this conduct the defendant is now estopped. The contention is
an afterthought, not in contemplation when the motion for a
directed verdict was made.

It is also insisted that there was no evidence before the jury
to support the finding that dowels were omitted by the direc-
tion and authorization of the defendant or his superintendent.
We have carefully examined the testimony on this point, and,
without hesitation, conclude that it was sufficient to be sub-
mitted to the jury. If the jury accepted Dotts' version of the
conversation between young Steven and Maddox, relative to this
question, they might reasonably infer that the language used
by Steven warranted Maddox in construing it as a direc-
tion or authorization to dispense with dowels. Certainly, after
Steven and Maddox had admitted having a conversation at the
time claimed, and had testified in reference thereto in an equiv-
ocal and more or less contradictory manner, it was for the
jury, and not the court, to determine just what Steven said and

what he meant by it. The fact that dowels were omitted immediately following said conversation was also a pertinent fact to be considered by the jury if they should find that such omission occurred. Moreover, this question was submitted to the jury under a prayer drawn by the defendant's counsel. In asking the court to submit this very question to the jury, the defendant cannot now be heard to say that there was no evidence to warrant such a submission.

We come now to the real question in the case, which is whether the omission of dowels in the piece of coping that fell was the proximate cause of the accident. It is contended by appellant that the proximate cause of the accident was the negligence of Dotts in attempting to climb from the top of this stone to the cornice below. Appellee, on the other hand, insists, and the jury by its verdict has so found, that the presence of dowels would have prevented the stone from slipping; that it was known to appellant's superintendent, and therefore to appellant, that Dotts' duties required him to walk and sit upon newly set coping, and that, even assuming the negligence of Dotts, the negligence of appellant was one proximate cause of the accident.

The question has so many times been considered by the Supreme Court of the United States that it is only necessary for us to examine the opinions of that court and apply the rule there announced to the facts of this case. In *Grand Trunk R. Co.* v. *Cummings,* 106 U. S. 700, 27 L. ed. 266, 1 Sup. Ct. Rep. 493, it was held that the negligence of a fellow servant did not prevent a recovery, if the negligence of the defendant had a share in producing the injury complained of.

*Gila Valley G. & N. R. Co.* v. *Lyon,* 203 U. S. 465, 51 L. ed. 276, 27 Sup. Ct. Rep. 145, was a suit for the negligent killing of the plaintiff's intestate by the railroad company. The decedent was a brakeman, and, owing to the orders of his conductor, two cars were negligently run upon a trestle whereon the track ended. Owing to this negligence, as the company contended, the buffer at the end of the trestle was knocked away and the cars precipitated to the bottom of the cañon below,

killing the brakeman. The company asked the court to take the case from the jury on the ground that the cause of the accident was the gross negligence of the conductor in ordering the cars to be detached from the train and engine, and that such negligence, being that of a fellow servant, precluded the right of recovery. The court said: "The rule would seem to be that, if the negligence of the company had a share in causing the injury to the deceased, the company was liable, notwithstanding the negligence of a fellow servant contributed to the happening of the accident."

In *Kreigh* v. *Westinghouse, C. K. & Co.* 214 U. S. 249, 53 L. ed. 984, 29 Sup. Ct. Rep. 619, an employee of the defendant was injured by being knocked off a staging by a heavy bucket attached to the end of the boom of a derrick, which bucket had been swung outward by a push of a fellow servant operating it. The court said: "If the negligence of the master in failing to provide and maintain a safe place to work contributed to the injury received by the plaintiff the master would be liable, notwithstanding the concurring negligence of those performing the work."

In *District of Columbia* v. *Dempsey,* 13 App. D. C. 533, it was held that where a broken telephone wire, which was negligently allowed to remain for several months suspended from a tree overhanging the street, was, by the act of a third person, fastened to an adjacent tree so as to form a loop, in which the plaintiff was caught and injured, recovery could not be defeated because of the contributory negligence of the third party.

In the instant case the evidence, we think, fully warrants the finding that the accident would not have occurred but for the failure of Maddox, under the direction and authorization of appellee's superintendent, to use dowels in setting the piece of coping that fell. In speaking of the liability of this piece of coping to lateral movement (assuming the absence of dowels) appellant's counsel, in their brief, say: "That bed of cement rendered the piece of coping slippery and insecure so that the slightest effort would cause it to slide." The decedent had the right to assume that he would be subjected to no unnecessary

dangers. He had the right to assume that the requirements of the specifications would be fully met by the appellant in so far, at least, as those requirements were reasonable and conducive to his safety. Under the finding of the jury it is apparent that, when appellant's superintendent authorized the laying of this coping without dowels, he knew, or should have known, that they were necessary to the safety of those below. He knew, or should have known, that, to set a piece of coping in watery cement and without dowels, to use the language of appellant's counsel, would render it "slippery and insecure so that the slightest effort would cause it to slide." There is evidence that Dotts, with the knowledge and without the remonstrance of appellant's superintendent, was in the habit of walking upon the coping, and the evidence is uncontradicted that his duties actually required him to sit upon the last piece laid, in assisting the mason to place the next piece. In the light of all this it would, we think, be both unreasonable and unjust to hold that the result of leaving out the dowels could not have been anticipated when the authorization or direction to do so was given. Granting that the accident might not have occurred but for the negligence of Dotts, the fact remains that the dangerous condition of the stone, for which the appellant must be held to have been responsible, concurred with the negligence of Dotts, and that without such concurrence the accident would not have happened. Under the rule announced by the Supreme Court, this being one of the proximate causes of the accident, a recovery is justified.

We have carefully examined the cases most relied upon by appellant on this point: *Goodlander Mill Co.* v. *Standard Oil Co.* 27 L.R.A. 583, 11 C. C. A. 253, 24 U. S. App. 7, 63 Fed. 405; *Cole* v. *German Sav. & L. Soc.* 63 L.R.A. 416, 59 C. C. A. 593, 124 Fed. 113, and *American Bridge Co.* v. *Seeds,* 11 L.R.A.(N.S.) 1041, 75 C. C. A. 407, 144 Fed. 609. In each of those cases the court found that the alleged act of negligence would not have produced the injury but for the interposition of an independent cause *which could not have been reasonably anticipated,* and hence that the intervening cause

became the only proximate cause. In this case we have ruled that the result of the omission of the dowels might have been reasonably anticipated. This ruling distinguishes the present case from those cited. The safety of those working below demanded the use of dowels. The jury has found that they were dispensed with at the suggestion of the defendant through his superintendent. The defendant was therefore responsible for the unsafe or dangerous condition thereby produced. Where a situation pregnant with danger is produced by the master, public policy demands that he be not relieved from the consequences of that situation, unless it clearly appears that there was no connection between the negligent act of the third person and his own negligence. Here Dotts was engaged in the line of his duty, and while he may have been negligent in attempting to do what he had done before, namely, in attempting to get from the coping to the cornice, the accident could not have occurred but for the dangerous condition produced by appellant. When the dislodged piece of coping was laid, it was known that another would follow, and that in laying this other piece it would be necessary to work over and about the piece that fell. We think, therefore, that the negligence of appellant concurred with the negligence of Dotts in the result, and hence that appellant's negligence was a proximate cause of such result.

One point remains. The suit was originally brought against James Steven and James Steven, Jr., doing business as James Steven & Company. In the amended declaration, however, the suit was discontinued as to James Steven, Jr., and from that time he was not considered a party to the suit, as the pleadings fully show. When judgment was entered upon the verdict, presumably through some oversight of the clerk, James Steven, Jr., was included therein. Appellee agrees with appellant that this mistake should be corrected. The judgment will therefore be modified so as to include only James Steven, and, as modified, will be affirmed, with costs.                    *Affirmed.*